UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(ROANOKE DIVISION)

| | |
|---|---|
| JEFFREY S. MEADOWS, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
| v. | )   Case No. 7:19-cv-00394-MFU |
| | ) |
| NORTHROP GRUMMAN INNOVATION SYSTEMS, INC., | ) |
| | ) |
| BAE SYSTEMS, INC., | ) |
| | ) |
| and | ) |
| | ) |
| BAE SYSTEMS ORDNANCE SYSTEMS, INC., | ) |
| | ) |
|   Defendants. | ) |

## MEMORANDUM IN SUPPORT OF NORTHROP GRUMMAN INNOVATION SYSTEMS, INC.'S MOTION TO DISMISS COUNTS IV & V OF THE AMENDED COMPLAINT

COMES NOW Defendant Northrop Grumman Innovations Systems, Inc. ("NGIS"), by counsel, and files this Memorandum in Support of its Motion to Dismiss Counts IV & V of the Amended Complaint (the "Complaint") filed by Plaintiff Jeffrey S. Meadows ("Meadows") and in support thereof states as follows:

### FACTUAL OVERVIEW[1]

NGIS is alleged to be the successor-in-interest to Orbital ATK, Inc. ("Orbital ATK"). (Compl., ¶ 10). As Plaintiff admits in his Complaint, Plaintiff was, for a period of time, simultaneously a full-time employee of both Orbital ATK and BAE Systems, Inc. and/or BAE

---

[1] The facts provided herein as are alleged in the Complaint and must be taken as true for purposes of this motion, however, NGIS does not admit their accuracy and demands strict proof thereof.

Systems Ordnance Systems, Inc. (collectively, "BAE"). (*Id.* at ¶¶ 17, 19). Upon learning of Meadows's dual employment under federal contracts for both Orbital ATK and BAE, Orbital ATK terminated Meadows's employment. (*Id.* at ¶ 66). Orbital ATK requested repayment of overpayment of wages (*Id.* at ¶ 68), which Meadows repaid. (*Id.* at ¶ 70). BAE placed Meadows on leave on May 1, 2017, while it investigated his conflict of interest resulting from his concurrent employment. BAE terminated Meadows's employment on or about June 21, 2017. (*Id.* at ¶ 172).

BAE is the operator the Radford Army Ammunition Plant in Radford, Virginia (the "Radford Arsenal") where Meadows was employed. (*Id.* at ¶¶ 8, 2). After learning of Meadows's dual-employment, BAE self-reported Meadows's dual-employment to the Office of Inspector General of the Department of Defense ("DOD") and the Department of Navy ("DON") (collectively, "DOD/DON"). (*Id.* at ¶ 71).

The DON issued a Notice of Proposed Debarment to Meadows that was subsequently dismissed. (*Id.* at ¶¶ 84, 87). The Complaint does not allege that Orbital ATK aided, assisted, or otherwise participated in BAE's reporting of Meadows to the DOD/DON. (*Id.* at ¶¶ 71–86). Plaintiff does allege, however, that Orbital ATK reported its findings regarding Meadows' dual-employment through the Joint Personnel Adjudication System ("JPAS"). (*Id.* at ¶ 92).

## **INTRODUCTION**

Meadows claims that BAE and Orbital ATK engaged in a common law conspiracy (Count IV) and a Virginia statutory business conspiracy (Count V) against him. (*Id.* at ¶¶ 165–200). But Orbital ATK is not alleged to have engaged in an unlawful act upon which either conspiracy claim could be based. Rather, the Complaint does no more than allege a series of independent actions by each Defendant, tied together only by the conclusory allegation that they somehow "conspired" to take these separate actions.

As a result, the Complaint does not allege facts that, even if true (which most are not), would be sufficient to support a claim that Orbital ATK conspired with BAE to injure Meadows. Moreover, the Complaint does not allege facts that would establish a harm to Meadows's business interests, which is required for a claim of Virginia statutory business conspiracy.

Simply put, the allegations in the Complaint are insufficient as a matter of law to support Plaintiff's conspiracy claims against Orbital ATK or NGIS. Therefore, the conspiracy claims against NGIS should be dismissed with prejudice and NGIS should be dismissed as a party.

## STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is properly granted "where, assuming the facts in the complaint are true, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Lewis v. Aetna Life Ins. Co.*, 982 F. Supp. 1158, 1160, 1997 WL 671815 (E.D. Va. 1997). In order to survive a motion to dismiss conspiracy claims, a plaintiff must allege the existence of the elements of the claim in more than "mere conclusory language." *Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004).

## ARGUMENT[2]

**I. Meadows's conspiracy claims (Counts IV and V) fail to meet the pleading standards required by *Iqbal* and *Twombly*, and their progeny.**

Meadows's conspiracy claims (Counts IV and V) fail to meet the pleading standards set forth in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Under *Twombly*,[3] the Supreme Court of the United States found that Rule 8(a)

---

[2] Orbital ATK joins in and incorporates by reference as if fully set forth herein the arguments, authority and defenses to Count IV and V of the Complaint set forth by BAE in its Motion to Dismiss and Memorandum in Support thereof.
[3] Notably, both *Twombly* and the instant case involve conspiracy claims.

requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face" in order to avoid dismissal under Rule 12(b)(6).

Here, the Complaint does not lack details, however, even accepting all factual allegations as true, there is not a plausible inference that Orbital ATK and BAE **conspired** to take the independent actions Meadows complains of. For example, it is incredible that Orbital ATK would have conspired with BAE to punish Meadows for his alleged refusal to misappropriate Orbital ATK's trade secrets for BAE.

Moreover, Meadows's Complaint does not "contain direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory," such as factual allegations of actual collusion between BAE and Orbital ATK. *Twombly* 550 U.S. at 562. The Complaint is devoid of factual allegations suggesting when or how Defendants entered into an agreement to act jointly to maliciously injure Meadows. There are no factual allegations suggesting how Orbital ATK allegedly acted in concert with BAE for the purpose of causing harm to Meadows. And Meadows's implied position that a conspiracy claim may be established by proof of a tacit understanding is contrary to federal law. "Allegations of a business conspiracy must be pled with particularity beyond mere conclusory language." *Scharpenberg v. Carrington*, 686 F. Supp. 2d 655, 661–62, 2010 WL 604868 (E.D. Va. 2010).

Here, Meadows's broad-brush general allegations and statements of mere parallel conduct fail to comply with the particularity requirements of Rule 9(b), lacks sufficient facts suggesting an agreement between Defendants to harm Meadows, and therefore fails to satisfy the pleading standards of *Twombly* and *Iqbal* and Rule 9(b)'s particularity requirement. *Id.* Accordingly, Meadows's conspiracy claims should be dismissed.

In addition, a Virginia statutory business conspiracy claim must be proven by clear and convincing evidence and is subject to a heightened pleading standard. *See People, Tech., & Processes, LLC v. Bowhead Logistics Sols., LLC,* E.D. Va. No. 1:17-CV-282, 2017 WL 2264476, at *3 (E.D. Va. May 23, 2017), and Fed. R. Civ. P. 9(b) ("Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Thus, to survive a dispositive motion, a plaintiff pleading a Virginia statutory business conspiracy claim must allege the existence of the elements of the claim in more than mere conclusory language. *Id.* "[I]t is not enough for [a] plaintiff merely to track the language of the conspiracy statute without alleging the fact that the alleged conspirators did, in fact, agree to do something the statute forbids." *Id*; the plaintiff must allege "some details of time and place and the alleged effect of the conspiracy." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007).

Plaintiff's conclusory allegations, as noted above, do not meet the required pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure. *Schlegel v. Bank of America, N.A.*, 505 F. Supp. 2d, 321, 325–26 (2007) ("[A]llegations of business conspiracy, like fraud, must be pleaded with particularity, and with more than mere conclusory language."). *Scharpenberg v. Carrington*, 686 F.Supp.2d 655, 661 (E.D. Va. 2010) (internal quotations omitted).

But Plaintiff's Complaint is void of any allegation of concerted action, details of the time, place or allege effect of the alleged conspiracy, and as discussed below, an unlawful act or purpose sufficient to state a claim in Count V of the Complaint.

Therefore, in addition to its multiple other pleading deficiencies, Count V of the Complaint should be dismissed for failure to meet the pleading standards under Rule 9(b) of the Federal Rules of Civil Procedure.

**II. Meadows's Virginia statutory business conspiracy claim (Claim V) must be dismissed because it fails as a matter of law and is barred by the federal enclave doctrine.**

*a. Meadows's claim for Virginia statutory business conspiracy fails as a matter of law because his alleged injury is not covered by the statute.*

Meadows's Virginia statutory business conspiracy claim must be dismissed because Meadows only alleges damages to his personal and employment interests,[4] neither of which are covered by the Virginia business conspiracy statutes.

Under Virginia Code §§ 18.2-499 and 500, the injury alleged must be to the plaintiff's "reputation, trade, business, or profession." *Id.* Interpreting these statutes, the Supreme Court of Virginia has held that they apply only "to business and property interest, **not personal or employment interests**." *Andrews v. Ring*, 266 Va. 311, 319, 585 S.E.2d 780, 784 (2003) (emphasis added); *see also Buschi v. Kirven*, 775 F.2d 1240, 1259 (4th Cir. 1985) (holding that a right of action under Virginia's business conspiracy statute arises only when malicious conduct is directed at one's business and not one's person).

Here, Meadows claims damages only to his employment interests, which are not actionable under Virginia Code §§ 18.2-499 and 500. Specifically, Meadows alleges that "he could be making $155,000/year with AECOM;" "Orbital ATK did not pay Meadows his 2016 performance incentive bonus;" Meadows "paid Orbital ATK a total of $4,948.65, which Orbital ATK alleged was owed to it for overpaying him," (Compl. ¶¶ 194–196); and most tellingly, ""BAE and Orbital ATK conspired to terminate Meadows' employment . . .." (Compl. ¶ 197). None of these relate to a business interest, only his personal employment interests. Accordingly, Meadows's Virginia statutory business conspiracy claim fails as a matter of law and Count V should be dismissed with prejudice.

---

[4] With the exception of insufficient and conclusory legal allegations reciting the statutory language. (Compl. ¶ 192, 197).

> **b.    Virginia's business conspiracy statute was adopted after the Radford Arsenal became a federal enclave. As a result, Meadows's statutory business conspiracy claim is barred under the Federal Enclave Doctrine.**

As alleged in Meadows's Complaint, BAE operates (and Meadows was employed at) the Radford Arsenal. (Compl. ¶¶ 8 and 22, respectively). In 1942, Virginia ceded jurisdiction over the Radford Arsenal to the United States government. Since then, the Radford Arsenal has been a federal enclave. *See Adams v. Alliant Techsystems, Inc*., 201 F.Supp.2d 700, 705 (2002) (reciting the facts regarding Virginia ceding jurisdiction and finding that the Radford Arsenal is a federal enclave).

Under the Federal Enclave Doctrine, state laws that were in effect prior to the establishment of a federal enclave continue to apply to the federal enclave unless Congress states otherwise, however, they are no longer state laws, instead they become federalized. *Id.* On the other hand, state laws enacted after the establishment of a federal enclave do not apply to the federal enclave unless they are within a state reservation of jurisdiction or are adopted by Congress. As a result, state laws adopted after the establishment of a federal enclave are not enforceable and are barred under the Federal Enclave Doctrine. *See, e.g.*, *Colon v. United States*, 320 F.Supp.3d 733, 745–46 (U.S. Dist. Ct., D. Md., 2018) (holding that state law is only applicable on federal enclave where state law was in effect at time of cessation unless state specifically retained jurisdiction over the subject matter or Congress specifically authorized enforcement of state law).

Meadows's conspiracy claims revolve around his employment at the Radford Arsenal and the termination of that employment. The Radford Arsenal became a federal enclave in 1942, however, Virginia's business conspiracy statute, Virginia Code § 18.2-499, *et seq.*, was not

adopted until 1950.[5] Accordingly, Meadows's claim of Virginia statutory business conspiracy is barred by the Federal Enclave Doctrine and must be dismissed with prejudice.

Finally, even if the Court were to determine that Meadows's statutory business conspiracy claim alleged injury within the scope of the statute, which it does not, and that it is not barred by the Federal Enclave Doctrine, which it is, Count V must still be dismissed for the same reasons set forth below that require dismissal of Meadows's Virginia common law conspiracy claim (Count IV).

### III. Meadows's common law conspiracy claim (Count IV) fails to allege necessary elements and must be dismissed.[6]

Under Virginia law, to establish a claim of common law conspiracy a plaintiff must allege: (1) two or more persons; (2) acted in concert to accomplish; (3) a criminal or unlawful purpose or a lawful purpose by some criminal or unlawful means; and (4) resulting damages caused by the defendant's acts committed in furtherance of the conspiracy. *Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 249 Va. 39, 48, 453 S.E.2d 261, 267 (1995). Here, Meadows has not sufficiently pleaded each element. Thus, Count IV of his Complaint should be dismissed.

#### a. *Meadows has not alleged facts supporting "concerted action" between BAE and Orbital ATK.*

Under Virginia law, the plaintiff must, at a minimum, allege that the defendants combined together to effect a "preconceived plan and unity of design and purpose, for the common design is the essence of the conspiracy." *Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F. Supp. 2d 483, 499, (E.D. Va. 2003) (quoting *Bull v. Logetronics, Inc.*, 323 F.Supp. 115, 131

---

[5] Virginia's statutory business conspiracy statute does not fall within a Virginia reservation of rights with regards to the Radford Arsenal, and it has not been adopted by Congress. *See Adams,* 201 F.Supp.2d at 705. Additionally, federal immunity doctrine prevents states from ordering the federal government to follow state law. *Baltimore Gas and Elec Co. v. U.S.*, 133 F.Supp.2d 721, 744 (U.S. Dist. Ct. D. Md. 2001).
[6] Orbital ATK joins in and incorporates by reference as if fully set forth herein the arguments, authority and defenses to Count IV of the Complaint set forth by BAE in its Motion to Dismiss and Memorandum in Support thereof.

(E.D.Va.1971) (internal citations omitted)). Consequently, in order to survive a motion to dismiss, Plaintiff must, at a minimum, plead the requisite concert of action and unity of purpose (i.e. a preconceived plan) in more than "mere conclusory language." *Id.* (quoting *Lewis v. Gupta*, 54 F.Supp.2d 611, 618 (E.D.Va.1999) (citing *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985) (finding a conspiracy claim asserted in mere conclusory language is based on inferences that are not fairly and justly drawn from the facts alleged)). Accordingly, a conspiracy claim based on a mere allegation that parties worked together in some "scheme", without more, cannot survive a motion to dismiss. *Gov't Employees.*, 330 F.Supp.2d at 706.

Here, the only allegations in the Complaint that allege concerted action between Orbital ATK and BAE are the conclusory allegations in paragraphs 175 and 180. Paragraph 175 alleges "BAE and Orbital ATK **conspired** to terminate Meadow's employment on 'conflict of interest' grounds," and paragraph 180 asserts "BAE and Orbital ATK **acted in concert** to defame and injure Meadows in his reputation, trade, business or profession, and to wrongfully terminate Meadows." (emphasis added). But these allegations of conspiracy are conclusory statements without a single supporting factual allegation regarding how, when or where BAE and Orbital ATK ever took any action to plan, collude or otherwise coordinated the allegedly tortious acts.

Without any factual allegations concerning BAE and Orbital ATK's alleged "concerted actions," Plaintiff's Complaint relies on conclusory language and sheer speculation—neither of which are sufficient to withstand a motion to dismiss. *See, e.g.*, *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 320 (2012) (holding that speculation and inference derived from a set of facts is insufficient to support a claim of conspiracy); and *Othentec Ltd. V. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (holding "mere speculation or the building of one inference upon another" is insufficient justification for proceeding to trial on a conspiracy claim). Accordingly, Meadows has not pleaded

9

"concerted action" between Orbital ATK and BAE with sufficient particularity to make the assertion plausible. Therefore, his conspiracy claims (Counts IV and V) should be dismissed.

  b. ***There is no underlying tort or unlawful purpose to support Meadows' conspiracy claims.***

Meadows's Complaint lacks any basis for this Court to find that BAE and Orbital ATK took concerted action in support of either (i) a criminal or unlawful purpose, or (ii) a lawful purpose by some criminal or unlawful means. Failure to include such allegations is as fatal to Meadows's conspiracy claims as Meadows's failure to alleged concerted action between the Defendants.

To properly plead a conspiracy claim, there must be some underlying conduct or tort which in and of itself is legally actionable, as it is well-settled in Virginia law that "[t]here can be no conspiracy to do an act the law allows." *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985); *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 2009 U.S. Dist. LEXIS 95056, at *618 (E.D. Va. Oct. 9, 2009).

Here, Meadows has not directly alleged that Orbital ATK committed an intentional tort underpinning his conspiracy claims. Nor has Meadows pleaded allegations implying that Orbital ATK committed an intentional tort. Instead, Meadows asserts only that "BAE and Orbital ATK conspired to terminate Meadow's employment on 'conflict of interest' grounds" and "BAE and Orbital ATK acted in concert to defame and injure Meadows in his reputation, trade, business or profession, and to wrongfully terminate Meadows." (Compl. ¶¶ 175 and 180, respectively).

Given this, Meadows's conspiracy claims against Orbital ATK must rely upon Meadows's conclusory allegation that Orbital ATK was somehow involved in wrongful or tortious actions taken against Meadows by BAE (presumably the alleged wrongful termination or alleged defamation set forth in Counts I-III). *See Twombly*, 550 U.S. at 556–57 ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice" to state a claim of conspiracy.).

To the extent that Meadows bases his conspiracy claims on BAE's alleged wrongful termination of his employment, his claims fail because: (1) a termination on "conflict of interest grounds" is not unlawful (even if factually mistaken as alleged); and (2) even if such grounds could support a Virginia law "*Bowman* Claim,"[7] such a claim is barred by the Federal Enclave Doctrine.

Meadows has not alleged the existence of an employment contract for a definite term between himself and BAE. Thus, Meadows's employment with BAE was employment at-will and terminable by either party with or without notice and with or without cause. *See, e.g.*, *Gray v. Best Repair Co., Inc., 27 Va. Cir. 454*, *1 (1982) ("[I]n the absence of some explicit contract to the contrary, every employment is an employment at will, and either the employer or the employee is free to terminate it at any time without notice . . . for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of a legal wrong.").

Second, Meadows has not alleged (and cannot allege) that BAE's decision to terminate his employment on "conflict of interest grounds" violated Virginia public policy (the conflict of interest involved federal interests). Accordingly, BAE's grounds for terminating Meadows's employment do not provide an unlawful basis sufficient to support a Virginia wrongful termination claim (and Meadows has not alleged a federal law claim for wrongful termination). *See, e.g.*, *Warner v. Buck Creek Nursery, Inc.*, 149 F.Supp.2d 246, 261 (2001) (holding that under Virginia law, an employee attempting to assert wrongful discharge must identify a statute establishing a public policy violated by employer).

---

[7] In 1985, the Supreme Court of Virginia recognized a wrongful discharge action in *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985). A *Bowman* Claim for wrongful discharge is limited to three factual circumstances: (1) The employer violates a Virginia public policy enabling the exercise of an employee's statutorily-created right; (2) The Virginia public policy violated by the employer is explicitly expressed in a statute and the employee is clearly a member of the class of persons directly entitled to the protection enunciated by the public policy; or (3) The discharge is based upon the employee's refusal to engage in a criminal act. *Rowan v. Tractor Supply Co.*, 559 S.E.2d 709 (Va. 2002).

Therefore, even if BAE and Orbital ATK had communicated regarding Meadows's dual-employment prior to terminating his employment, as alleged, termination of Meadows's employment on such grounds would not have been an unlawful basis or sufficient to support a conspiracy claim under Virginia law. As a result, Meadows's conspiracy claims should be dismissed with prejudice because his employment termination was not unlawful nor was it terminated for unlawful reasons.

Moreover, because Virginia law did not recognize a common law claim for wrongful termination until 1985 (generally referred to as a "*Bowman* Claim") Meadows's claim for wrongful termination of his employment at the Radford Arsenal is barred by the Federal Enclave Doctrine, as explained above. As a result, even if it were a violation of current Virginia law, which it is not, it still would not be an unlawful basis for termination of employment on a federal enclave and cannot serve as a basis for Meadows's conspiracy claims. *See, e.g.*, *Allison v. Boeing Laser Technical Services*, 689 F.3d 1234, 1237 (10th Cir. 2012) (holding that employment law claims of wrongful discharge and retaliatory discharge are barred by federal enclave doctrine where not recognized prior to establishment of the federal enclave).

To the extent that Meadows's conspiracy claims are premised upon his underlying claim of wrongful termination, the conspiracy claims fails as a matter of law and should be dismissed with prejudice. Similarly, Meadows's claim against BAE for its alleged defamation also fails as a matter or law, as set forth below.

### c. Meadows's defamation claims against BAE (Counts I and II) are barred by the Absolute Immunity Doctrine.

Absolute immunity extends to private persons under contract with the federal government when performing government-delegated duties under the contract. *See Mangold v. Analytic Services*, 77 F.3d 1442, 1444 (4th Cir. 1996). "[W]hen a governmental function is delegated to private contractors, the latter must receive the same immunity afforded federal employees in order to encourage truthful reporting." *Id*. at 1447. Accordingly, "government contractors are cloaked with absolute immunity for statements made in response to official government inquiries in a government procurement fraud investigation concerning their dealings with the government." *Id*.

Here, as in *Mangold*, the allegedly defamatory statements were part of an official government-contract fraud inquiry. (Compl. ¶¶ 71–85.) The statements BAE is alleged to have made to the government were clearly in the context of reporting suspected fraud or misconduct by Meadows (denied by Meadows) for investigation by the government; and are ones which BAE had a mandatory obligation to report.[8] Therefore, BAE is cloaked with absolute immunity from liability resulting for its statements.

BAE is a mandatory reporter as a DOD contractor, and is required by law to report any compromised or suspected compromise of classified information, and any suspicion of fraud and abuse, or misuse, of government resources. When BAE reported its suspicions concerning Meadows to the DOD/DON, it was performing a governmental function for which it enjoys absolute immunity from libel and defamation suits by employees. *Becker v. Philco Corp*., 234 F.Supp. 10 (E.D. Va. 1964) (holding federal contractor required by law to report any compromise or suspected compromise of classified information was entitled to absolute privilege.).[9]

---

[8] A more fully set-forth in BAE's Motion to Dismiss.
[9] Should Plaintiff attempt to infer some similar statement by Orbital ATK or its participation in BAE's reporting from the Complaint, it would enjoy the same protection, as its employment of Meadows is also alleged in the Complaint to

Accordingly, as a matter of law, Meadows's claim of defamation against BAE is barred by the Absolute Immunity Doctrine and, as a result, cannot be used by Meadows as a basis for his speculative conspiracy claims. Therefore, Meadows's has not alleged an underlying unlawful action to support his conspiracy claims and they should be dismissed.

### d. *Meadows has not alleged damages caused by Defendants acts committed in furtherance of the alleged conspiracy.*

In addition to failing to allege concerted activity and underlying unlawful action, Meadows has not pleaded damages resulting from Defendants alleged acts committed in furtherance of the alleged conspiracy. Rather, Meadows's damages claimed in paragraphs 177–179 are simply not causally connected to his conspiracy claims and are nothing more than conjecture and speculation, or, at best, with regard to the damages in paragraphs 195–196 claiming underpayment of wages earned during employment—they are a garden variety contractual claim not asserted by Plaintiff.

An action for common law civil conspiracy lies only if damages are sustained as a result of a wrongful or tortious act. *Dunlap v. Cottman Transmission Systems, LLC*, 287 Va. 207, 215, 754 S.E.2d 313, 317 (2014). First, Meadows suggests that but-for Orbital ATK's conduct, he would have been offered, and could have accepted, more lucrative job offers. Again, Meadows provides nothing more than sheer speculation regarding these alleged lucrative offers of employment. Second, Meadows claims he was not paid a 2016 bonus and that he had to reimburse Orbital ATK for overpayment of wages. But an action for a bonus payment would be subject to the terms of the bonus plan, which are not alleged. Nor has Meadows alleged Orbital ATK violated

---

have been in support of Orbital ATK's government contracts, and work for the DOE and DOD, as Orbital ATK is required to report through JPAS any information that raises doubt about the integrity or character of a cleared employee or that causes the DOD to question an individual's judgment, reliability, or suitability to have access to classified information; may include information about a cleared employee's personal conduct, among other concerns. *See* National Industrial Security Program Operating Manual, Paragraph 1-302a.

its bonus payment plans or policies. Similarly, if Meadows did not believe he owed Orbital ATK reimbursement for overpaid wages, then why did he repay Orbital ATK and now seek to collect these repayments as damages in this case. Like his other alleged "damages" Meadows has not offered any rationale or basis for his position. He simply claims these damages somehow resulted from the alleged conspiracy.

Assuming, *arguendo*, that Meadows intends that but for his termination of employment he would have been paid his bonus and retained the overpayments, his claim fails because the termination of his employment was not unlawful (as explained above). And, with regard to the alleged lucrative employment offers, it is common-sense that Meadows could not have accepted another full-time job while remaining employed (full-time) by two other employers (BAE and Orbital ATK).[10]

For example, Meadows alleges that he was offered a job with AECOM with a base salary of $155,000.00. He then alleges, without explanation, that due to Orbital ATK's statements in JPAS, he is still "unable" to accept AECOM's offer. (Compl. at ¶ 92). He alleges no action that Orbital ATK has taken in concert with BAE to prevent Meadows from accepting any job offer or explains how he is unable to accept a job offer as a result of Orbital ATK's actions or how Orbital ATK's actions are unlawful.

Moreover, Meadows admits that he voluntarily stopped doing work for Orbital ATK: "[o]n April 23, 2017, Meadows decided not to take the job with CNS [another entity related to Orbital ATK] after discovering he would have to relocate to Texas and not nearby Tennessee." (*Id.* at ¶ 168–169). He then claims that Orbital ATK's motivation to report the CNS job offer to BAE was to "get Meadows fired from BAE, and/or to force Meadows to take the job offered by CNS." (*Id.*

---

[10] Common-sense also suggests that there is an inherent contradiction in maintaining two full-time jobs, which apparently is what led to BAE's concerns regarding Meadows.

at ¶ 171). Accordingly, Meadows's damages flow from Orbital ATK's allegedly independent, non-concerted action, taken in an alleged attempt to induce Meadows to accept a job offer from another company (not AECOM), and not because Orbital ATK and BAE decided to work together to take some unlawful action against Meadows. Simply put, these are not damages resulting from a conspiracy between the Defendants, and Meadows's alleged damages are the result of the disclosure of his unauthorized dual full-time employment with both Defendants (the exact basis for BAE's lawful termination of Meadows). Therefore, Meadows has not pleaded damages flowing from the alleged conspiracy, and his conspiracy claims must be dismissed.

As set forth above, Meadows has failed to plead the necessary elements to support his conspiracy claims and, as a matter of law Meadows cannot prove the required elements. Thus, his conspiracy claims (Counts IV and V) should be dismissed, with prejudice.

## CONCLUSION

WHEREFORE, for the foregoing reasons, NGIS respectfully requests that this Court grant its Motion to Dismiss Counts IV and V of the Complaint and dismiss NGIS from this action.

Respectfully submitted,

**NORTHROP GRUMMAN INNOVATIONS SYSTEMS, INC.**


By: s/James K. Cowan, Jr.

James K. Cowan, Jr. (VSB 37163)
Eric D. Chapman (VSB 86409)
CowanPerry PC
250 South Main Street, Suite 226
Blacksburg, Virginia 24060
Telephone: (540) 443-2850
Facsimile: (888) 755-1450
jcowan@cowanperry.com
echapman@cowanperry.com

*Counsel for Defendant,*
*Northrop Grumman Innovations Systems, Inc.*

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and exact copy of the foregoing Memorandum was filed via ECF this 24th day of May 2019:

John R. Thomas, Jr., Esq.
Healy Hafemann Magee LLC
11 Franklin Road, S.W.
P.O. Box 8877
Roanoke, Virginia 24014
jt@hhm.law

John P. Fishwick, Esq.
Monica L. Mroz, Esq.
Carrol M. Ching, Esq.
Daniel J. Martin, Esq.
Fishwick & Associates PLC
30 Franklin Road, Suite 700
Roanoke, Virginia 24011
john.fishwick@fishwickandassociates.com
monica.mroz@fishwickandassociates.com
carrol.ching@fishwickandassociates.com
daniel.martin@fishwickandassociates.com

*Counsel for Plaintiff, Jeffrey S. Meadows*


Thomas M. Winn, III, Esq. (VSB # 35758)
winn@woodsrogers.com
Joshua R. Treece, Esq. (VSB #79149)
jtreece@woodsrogers.com
WOODS ROGERS PLC
10 South Jefferson Street, Suite 1400
Roanoke, Virginia 24011
Telephone: (540) 983-7529
Facsimile: (540) 983-7711

*Counsel for Defendants BAE Systems, Inc.
and BAE Systems Ordnance Systems, Inc.*

                                                             s/James K. Cowan, Jr.