# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **JEFFREY S. MEADOWS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No.: 7:19-cv-00394** |
| | ) | |
| **NORTHROP GRUMMAN INNOVATION SYSTEMS, INC.,** | ) ) | |
| | ) | |
| **BAE SYSTEMS, INC.,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **BAE SYSTEMS ORDNANCE SYSTEMS, INC.,** | ) ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS BAE SYSTEMS, INC.'S & BAE SYSTEMS ORDNANCE SYSTEMS, INC.'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants BAE Systems, Inc. ("BAE Systems") and BAE Systems Ordnance Systems, Inc. ("OSI") (collectively "BAE"), by counsel, hereby file this Memorandum in Support of their Motion to Dismiss the Amended Complaint ("Complaint") of Plaintiff Jeffrey S. Meadows ("Meadows"), with prejudice, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and in support thereof states as follows:

## RELEVANT BACKGROUND

The Radford Army Ammunition Plant ("Arsenal") is a munitions production facility that has operated continuously in Southwest Virginia for more than seventy-five years. *See* (Dkt. 1-2 at ¶ 3). The Arsenal is the primary propellant manufacturing facility for the United States Department of Defense. *Id.* at ¶ 4. "In April 1942, by Deed of Cession, the Commonwealth of

Virginia ceded exclusive jurisdiction to the United States of America to all realty comprising the [Arsenal], retaining jurisdiction only with regard to the service of civil or criminal process." *Adams v. Alliant Techsystems, Inc.*, 218 F. Supp. 2d 792, 795 (W.D. Va. 2002). Accordingly, as this Court has recognized, the Arsenal is a federal enclave. *Id.* at 795, n.1.

BAE is a federal contractor that has operated the Arsenal since it was awarded the facility's federal contract, and BAE OSI started operating the Arsenal pursuant to the contract in July 2012. (Dkt. 1-2 at ¶ 5). Meadows was hired by BAE OSI as a full-time Program Manager I, reporting to Michael Bate ("Bate") at the Arsenal.[1] *Id.* at ¶ 6. When applying for his position, Meadows interviewed on-site at the Arsenal. *Id.*. During his employment with BAE OSI, Meadows' office was located within the Arsenal in Building 220, and his physical presence was normally required to perform his duties within the Arsenal. *Id.* at ¶ 7; *see also id.* at ¶¶ 8-9, Ex. 1.

On or around May 1, 2017, BAE received an allegation that Meadows was simultaneously employed by Orbital ATK, Inc. ("ATK"), a direct competitor of BAE. *See* Compl. at ¶ 64; Compl. Ex. E at 2. BAE investigated the allegation, and "[o]n July 25, 2017, [BAE] submitted a *mandatory disclosure* to the Office of Inspector General [("OIG")] of the Department of Defense alleging time mischarging related to Meadows' non-work activities when he was employed as Program Manager I in Radford, VA[ and while] [h]e was simultaneously employed as a consultant

---

[1] Meadows was employed only by BAE Systems Ordnance Systems, Inc., not BAE Systems, Inc. As discussed herein, Meadows cannot state a claim against BAE Systems, Inc. (or BAE Systems Ordnance Systems, Inc.). If, however, both BAE defendants are not dismissed pursuant to the instant motion, and Meadows fails to amend his Complaint to remove BAE Systems, Inc. as a party herein, BAE Systems, Inc. reserves all rights to file motions seeking its dismissal from this action pursuant to Rules 12(b)(6), 12(c) or otherwise on the grounds that it is not a proper party. Meadows allegations do not distinguish between the BAE entities; thus, for ease of reference, defendants may do the same herein without prejudice to their right to object to Meadow's vague and conclusory conflation of these entities.

by [ATK] without obtaining permission from BAE." Compl. Ex. F at 3 (emphasis added). As stated in the Department of Navy's ("DON") Memorandum in Support of Proposed Debarment of Jeffrey S. Meadows:

> According to [BAE's mandatory] disclosure, the investigation determined that Meadows mischarged a total of 583 hours. Follow up communication with BAE's Vice President (VP) and Chief Ethics Officer revealed that the mischarged hours were calculated based on the total time that Meadows was employed by both companies, starting in January 2016 until he was terminated.

*Id.* Ex. F. at 3.

On June 21, 2017, Matt Linkous ("Linkous"), BAE OSI's HR Manager at the Arsenal, sent a letter from the Arsenal to Meadows notifying him that, following an investigation which began on or around May 1, 2017, Meadows was found to have "violated [BAE's] Code of Conduct and Ethics policies related to Conflict of Interest." (Dkt. 1-2 at ¶ 10). In addition, Meadows was found to have "violated [BAE's] Timekeeping policy and mischarged time while [he] worked for BAE." *Id.* Accordingly, Meadows was terminated from his employment with BAE OSI at the Arsenal effective June 21, 2017. *Id.* The investigation that supported Meadows' termination relied, in part, on documents and information located within and originating from the Arsenal. *Id.* at ¶ 11.

Even though the Arsenal is a federal enclave and BAE was performing delegated federal functions when engaged in the alleged conduct (including fulfilling BAE's mandatory reporting obligations under Federal Acquisition Regulations), Meadows nonetheless filed a Complaint in state court alleging purported state law claims against BAE, including: (1) common law defamation (Count I); (2) defamation *per se* (Count II); (3) wrongful discharge (Count III); (4) common law conspiracy against BAE and ATK's successor, Northrop Grumman Innovation Systems, Inc. ("NGIS") (Count IV); and (5) statutory business conspiracy against BAE and NGIS (Count V).

## ARGUMENT SUMMARY

Meadows' Complaint must be dismissed, in its entirety and with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6) for several reasons.

**First,** BAE is absolutely immune from liability for all claims (defamation, wrongful discharge and conspiracy, Counts I-V) because BAE was performing delegated, federal government functions—and is thereby shielded by the doctrine of derivative sovereign immunity—when engaged in all of the challenged conduct.

**Second,** BAE is absolutely immune from liability for wrongful discharge and statutory business conspiracy (Counts III and V) pursuant to the federal enclave doctrine since wrongful discharge and statutory business conspiracy are causes of action that developed under state law *after* the Commonwealth of Virginia ceded the Arsenal to the Federal Government in April 1942, and therefore, those claims are not cognizable under the federal enclave doctrine.

**Third**, Meadows' wrongful termination claim should be dismissed pursuant to Rule 12(b)(6) since wrongful termination is a "very limited" exception to the at-will employment doctrine that applies in only three instances: "(1) where 'an employer violated a policy enabling the exercise of an employee's statutorily created right[]'; (2) where 'the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy[]'; and (3) where 'the discharge was based on the employee's refusal to engage in a criminal act.'"[2] Meadows fails to plausibly plead a wrongful termination claim that falls within any of these recognized

---

[2] *Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 451 (E.D. Va. 2002) (quoting *Rowan v. Tractor Supply Co.*, 263 Va. 209, 559 S.E.2d 709 (2002)).

exceptions to the at-will employment doctrine.

**Fourth**, Meadows' common law conspiracy and statutory business conspiracy claims should be dismissed, as he fails to plausibly allege any actionable conspiracy. Meadows' statutory business conspiracy claim must be dismissed pursuant to Rule 12(b)(6) because "[i]t is well-settled that § 18.2-499 applies only to injuries 'to business and property interests, not to personal or employment interests.'"[3] Meadows' common law conspiracy claim must be dismissed pursuant to Rule 12(b)(6) because Meadows fails to plausibly allege: (1) an actionable underlying tort, or unlawful act, as required to state a conspiracy claim; or (2) an agreement to conspire beyond mere "allegation[s] of parallel conduct and a bare assertion of conspiracy [which] will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).

Accordingly, Meadows' Complaint should be dismissed, in its entirety and with prejudice.

## ARGUMENT AND AUTHORITIES[4]

### I.   Under the Federal Enclave Doctrine, Meadows' Claims Only Arise, If At All, Under Federal Law

While Meadows purports to assert state law claims against BAE, such claims only arise, if at all, under federal law because they relate to and arise out of Meadows' work for BAE at the Arsenal, a federal enclave.

"A federal enclave is created when a state cedes jurisdiction over land within its border to the federal government and Congress accepts that cession." *JAAAT Tech. Servs., LLC v. Tetra*

---

[3] *Hanger v. Berkley Grp., Inc.*, 2015 U.S. Dist. LEXIS 68751 at *32 (W.D. Va. 2015) (internal brackets removed) (quoting *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 321 (4th Cir. 2012)).

[4] BAE joins in and incorporates, by reference, the arguments, authorities and defenses to Counts IV and V of the Complaint set forth in Northrop Grumman Innovation Systems, Inc.'s Motion to Dismiss and Memorandum in Support thereof as if fully set forth herein.

*Tech Tesoro, Inc.*, 2016 U.S. Dist. LEXIS 41946 at \*\*8-9 (E.D. Va. 2016) (quoting *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1235 (10th Cir. 2012)). "[A]fter a state has transferred authority over a tract of land creating a federal enclave, the state may no longer impose new state laws on the land." *Id.* That is, "the state law in place at the time of cession continues in force as federal law." *Id.* (citing *James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 100 (1940)); *Adams v. Alliant Techsystems, Inc.*, 218 F. Supp. 2d 792, 799 n.9 (W.D. Va. 2002).

Further, "[w]hen exclusive jurisdiction is ceded to the United States, the laws of the state at the time of the cession will continue in effect ***as federal law***, and subject matter jurisdiction under 28 U.S.C. § 1331, is proper." *JAAAT Tech. Servs., LLC*, 2016 U.S. Dist. LEXIS 41946 at \*18 (emphasis altered) (citing multiple cases "flatly conclud[ing]" the same). Indeed, Article I, section 8, clause 17 of the United States Constitution provides:

> Congress shall have the Power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and ***to exercise like Authority*** over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, ***Magazines, Arsenals,*** dock-Yards, and other needful Buildings . . . . (emphasis added)

Thus, under the federal enclave doctrine, when "the United States acquires with the 'consent' of the state legislature land within the borders of that State ... the jurisdiction of the Federal Government becomes 'exclusive.'" *Paul v. United States*, 371 U.S. 245, 264 (1963).

This Court has already found that the Arsenal is a federal enclave established "[i]n April 1942, by Deed of Cession, [wherein] the Commonwealth of Virginia ceded exclusive jurisdiction to the United States of America to all realty comprising the [Arsenal], retaining jurisdiction only with regard to the service of civil or criminal process." *Adams*, 218 F. Supp. 2d at 795, 796 ("[B]oth parties agreed that the Arsenal was on a federal enclave, a fact incidentally supported by

the record.  The issue was properly before the court, and the court decided it."); *see also Adams*, 218 F. Supp. 2d at n.1 (recognizing plaintiff's belated challenge to the Arsenal's status as a federal enclave on his motion to reconsider was not only late, but "more fundamentally…wrong"); *cf. United States v. Scott*, 188 F. App'x 213, 215 n.2 (4th Cir. 2006) (recognizing a court may take "judicial notice that … 'property [is] administered by the Department of Defense [and] within the special territorial jurisdiction of the United States'").

It is undisputed that Meadows' claims against BAE arise out of the federal enclave.  *See generally* Compl.; *cf.* Linkous Declaration.  There likewise can be no dispute that Meadows' claims, to the extent they are cognizable, are federalized state-law claims under the federal enclave doctrine.  *See, e.g., Allison v. Boeing Laser Tech. Servs.*, 2010 U.S. Dist. LEXIS 152175, at *15, n.6 (D.N.M. 2010) (finding plaintiff's claims were subject to the federal enclave doctrine because he was "based in Building 416" of the enclave and did "some work" in the enclave; it does not matter that he did some work from home or outside the enclave or that Boeing was based in Illinois, outside the enclave); *aff'd*, 689 F.3d 1234 (10th Cir. 2012); *Rosseter v. Industrial Light & Magic*, 2009 U.S. Dist. LEXIS 5307 at **4-5 (N.D. Cal. 2009) (same); *Powell v. Tessada & Assocs.*, 2005 U.S. Dist. LEXIS 46922 at *7 (N.D. Cal. 2005) (finding "defendants' employment practice on the enclave was controlling … regardless of where the decision not to retain Plaintiffs was made."); *Lockhart v. MVM, Inc.*, 175 Cal. App. 4th 1452, 97 Cal.Rptr.3d 206, 212 (Ct. App.2d Dist. Cal. 2009) ("As the employee of a contractor operating on the enclave, [plaintiff's] claims are governed by the enclave's law, rather than by state law," regardless of where the termination decision was made.); *Taylor v. Lockheed Martin Corp.*, 78 Cal.App.4th 472, 481, 92 Cal. Rptr. 2d 873 (Ct. App.2d Cal. Dist. 2000) (rejecting argument that plaintiff's claims did not arise on the enclave because he was on paid suspension outside of the enclave when he was terminated).

Accordingly, Meadows' purported state law claims only arise, if at all, under federal law. For the reasons discussed below, BAE is absolutely immune from liability for all such alleged federalized claims, some of which are not cognizable claims pursuant to the federal enclave doctrine.

## II. Meadows' Complaint Must Be Dismissed For Lack Of Subject Matter Jurisdiction Because BAE Is Absolutely Immune From All Alleged Claims & Liability

While Meadows' claim arise under federal law, the doctrine of derivative sovereign immunity shields BAE from any and all liability for such claims because BAE was performing federal functions on behalf of the United States Department of Defense ("DOD") at the Arsenal when it allegedly engaged in the challenged conduct. BAE, therefore, is an instrumentality of the federal government and is immune from liability for Meadows' federalized state law claims.

### A. This Court Can Look Outside The Pleadings When Ruling On BAE's Rule 12(b)(1) Motion To Dismiss For Lack Of Subject Matter Jurisdiction

"Under the concept of derivative sovereign immunity, stemming from the Supreme Court's decision in *Yearsley* [*v. W. A. Ross Constr. Co.*, 309 U.S. 18, 20-21(1940)], agents of the sovereign are also sometimes protected from liability for carrying out the sovereign's will." *Cunningham v. Gen. Dynamics Info. Tech.*, 888 F.3d 640, 643 (4th Cir. 2018); (citing *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 341-42 (4th Cir. 2014). This immunity derives from "'the government's unquestioned need to delegate governmental functions,' and the acknowledgement that '[i]mposing liability on private agents of the government would directly impede the significant governmental interest in the completion of its work.'" *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000) (quoting *Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1448 (4th Cir. 1996)).

When a defendant asserts immunity from state law under the Supremacy Clause or federal enclave doctrine and/or immunity from federal or state law under the doctrine of derivative

sovereign immunity, those issues are properly raised in a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *See, e.g., Cunningham v. Gen. Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018) (recognizing derivative sovereign immunity is jurisdictional because "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction."); *Cortez v. E.E.O.C.*, 585 F.Supp.2d 1273, 1282 (D.N.M. 2007) (dismissing plaintiff's state law claims pursuant to Rule 12(b)(1) and stating, "Issues about the United States' sovereign immunity ... implicate the federal district court's jurisdiction. If Congress has not waived sovereign immunity, the federal court does not have jurisdiction to hear the claim").

A Rule 12(b)(1) motion may attack either (1) the allegations of the complaint as insufficient to confer jurisdiction or (2) the existence of subject matter jurisdiction in fact. *JAAAT Tech. Servs., LLC*, 2016 U.S. Dist. LEXIS 41946 at \*\*2-3 (internal citation omitted). In the former approach, all allegations of material fact are construed in the light most favorable to the plaintiff. In the latter approach, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see also id.*

Because BAE asserts it is absolutely immune from liability from all of Meadows' federalized state law claims, to the extent they are cognizable under the federal enclave doctrine, BAE is challenging this Court's subject matter jurisdiction in fact on immunity grounds, and the Court can look outside the pleadings to "consider the evidence presented with respect to the jurisdictional issue." *Id.* Further, Meadows bears the burden of establishing jurisdiction. *Id.* As

discussed more fully below, Meadows' claims relate to BAE's performance of exclusively federal functions at the Arsenal, a federal facility, pursuant to a federal defense contract. As a result, derivative sovereign immunity and federal enclave immunity bars Meadows' claims against BAE. The Court, therefore, lacks subject matter jurisdiction.

### B. BAE Is Entitled to Derivative Sovereign Immunity And Is Absolutely Immune From Liability For All Asserted Claims

#### i. BAE Is Absolutely Immune From Liability for Defamation Under Counts I-II

Meadows alleges that BAE "of its own initiative … made [a mandatory] disclosure to the DOD/DON" to report that Meadows mischarged his time and work and overbilled the federal government when working simultaneously for BAE and ATK, without BAE's knowledge. Compl. at ¶¶ 100, 103; *see also* Compl. Ex. F at 3 (Memo from DON's Assistant General Counsel recognizing BAE "submitted a ***mandatory disclosure*** to the Office of Inspector General of the Department of Defense") (emphasis added). Meadows further alleges that BAE's report was false and that BAE "repeated these [allegedly] false statements in e-mail correspondence to Michael J. Woods, Assistant Counsel at DON." *Id.* at ¶¶ 100-101. BAE, however, is absolutely immune from liability for *all* alleged defamatory statements because it was fulfilling its governmentally imposed mandatory duty to report.

The Fourth Circuit has repeatedly and consistently held that an action for defamation "will not lie … against a private party fulfilling its governmentally imposed duty to inform" or report. *Becker v. Philco Corp.*, 372 F.2d 771, 776 (4th Cir. 1967); *Mangold v. Analytic Services*, 77 F.3d 1442, 1444 (4th Cir. 1996); *see also Scharpenberg v. Carrington*, 686 F. Supp. 2d 655, 657 (E.D. Va. 2010). In *Mangold*, the Fourth Circuit recounted the policy supporting this immunity for government contractors:

The public interest in facilitating the government's policing of its contracting process--a process subject to the temptation of conflicting self interest and to the risks of undue influence and corruption--is perhaps as important as the public interest in facilitating the government's policing of itself. And to expose private government contractors who are responding to and cooperating with such investigations to the risk of state tort claims would chill the investigative effort to the same extent that exposing cooperating government employees would. *Ultimately, to allow such tort liability, whether against* government employees *or private contractors, would tend to make government less efficient.*

77 F.3d at 1447 (emphasis added). This rationale "demands that the government possess the ability meaningfully to investigate these contracts to ensure that they are performed without fraud, waste, or mismanagement." *Id.* at 1448. The Fourth Circuit, therefore, recognizes "that government contractors are cloaked with absolute immunity for statements made in response to official government inquiries in a government procurement fraud investigation concerning their dealings with the government." *Scharpenberg*, 686 F. Supp. 2d at 659 (citing *Mangold*, 77 F.3d at 1444).

Absolute immunity is not limited to instances where the government contractors are responding to individualized inquiries initiated by the Government; it also applies when government contractors, such as BAE, initiate and provide reports pursuant to mandatory reporting obligations and federal regulations. Indeed, that issue was addressed directly in *Becker*, and the Fourth Circuit affirmed the district court's conclusion that the government contractor was absolutely immune from defamation liability when it investigated and reported a suspected breach of classified information by plaintiffs. *Becker*, 372 F.2d 771, 772-74.

Similar to Meadows, the plaintiffs in *Becker* attempted to assert defamation claims against the contractor for its self-reporting, which caused plaintiffs' clearances to be suspended and "they lost their positions and the chance of similar employment." *Id.* at 772. The Fourth Circuit held the contractor was absolutely immune because "[the self-reporting] was mandatory, and immediately within the province of [the contractor's] functions." *Id.* at 774. In support of its

decision, the Fourth Circuit recognized "[t]hat an utterance plainly commanded by the duties of the author to the Government has been repeatedly recognized as unconditionally privileged." *Id.* at 775 (citing *Preble v. Johnson*, 275 F.2d 275 (10th Cir. 1960) and *Standard Nut Margarine Co. of Florida v. Mellon*, 63 App.D.C. 339, 72 F.2d 557 (1934)).

Here, there can be no dispute that BAE's challenged statements were plainly commanded by the duties of BAE to the government. First, the DON Memorandum attached to Meadows' Complaint establishes that BAE was acting pursuant to its "mandatory disclosure" obligations to DOD. Compl. Ex. F at 3; *cf. Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached … the exhibit prevails."). Further, applicable Federal Acquisition Regulations ("FAR") demonstrate the same. Section 52.203-13 of the FAR, "Contractor Code of Business Ethics and Conduct," provides, among other things, that:

> (1) … the Contractor shall—
>
> > (i) Have a written code of business ethics and conduct;
> >
> > …
>
> (2) The Contractor **shall**--
>
> > (i) *Exercise due diligence to prevent and detect criminal conduct*; and
> >
> > (ii) *Otherwise promote an organizational culture that encourages ethical conduct and a commitment to compliance with the law*.
>
> …
>
> (3)(i) The Contractor **shall timely disclose**, in writing, to the agency Office of the Inspector General (OIG), with a copy to the Contracting Officer, whenever, in connection with the award, performance, or closeout of this contract or any subcontract thereunder, the Contractor has **credible evidence** that a principal, employee, agent, or subcontractor of the Contractor has committed-- (A) A violation of Federal criminal law involving **fraud**, **conflict of interest**, bribery, or gratuity violations found in Title 18 of the United States Code; or (B) A violation of the civil False Claims Act (31 U.S.C. 3729-3733).

48 C.F.R. § 52.203-13(b) (emphasis added). Section 3.1003(a) of the FAR, "Contractor Requirements," likewise provides, among other things:

> (2) Whether or not the clause at 52.203-13 [Contractor Code of Business Ethics and Conduct] is applicable, a contractor may be suspended and/or debarred *for knowing failure by a principal to* **timely disclose to the Government, in connection with** the award, performance, or closeout of a Government contract performed by the contractor or a subcontract awarded thereunder, **credible evidence** of a violation of Federal criminal law involving **fraud**, **conflict of interest**, bribery, or gratuity violations found in Title 18 of the United States Code or a violation of the civil False Claims Act. Knowing failure to timely disclose credible evidence of any of the above violations remains a cause for suspension and/or debarment until 3 years after final payment on a contract (see 9.406-2(b)(1)(vi) and 9.407-2(a)(8)).

> (3) The Payment clauses at FAR 52.212-4(i)(5), 52.232-25(d), 52.232-26(c), and 52.232-27(l) require that, **if the contractor becomes aware that the Government has overpaid** on a contract financing or invoice payment, the contractor shall remit the overpayment amount to the Government. *A contractor may be suspended and/or debarred for knowing failure by a principal to* **timely disclose credible evidence of a significant overpayment**, other than overpayments resulting from contract financing payments as defined in 32.001 (see 9.406-2(b)(1)(vi) and 9.407-2(a)(8)).

48 C.F.R. § 3.1003(a) (emphasis added).

Meadows alleges in his Complaint that BAE reported Meadows for fraud, conflict of interest and/or overbilling when BAE reported to DOD that "Meadows mischarged a total of 583 hours," and BAE "removed [Meadows' overbilling] from the contract and charged [it] to unallowable on the company's books and records in June 2017." *See, e.g.,* Compl. Ex. E, Ex. F. There can be no dispute that BAE was fulfilling its delegated, federal duty and mandatory reporting obligations when BAE made these allegations. Thus, BAE is absolutely immune from any liability connected therewith.

A nearly identical defamation claim was presented in *Scharpenberg,* and the Eastern District of Virginia likewise concluded the contractor was absolutely immune from defamation liability. *Scharpenberg*, 686 F. Supp. 2d at 657. In *Scharpenberg*, McNeil, a government

contractor, entered into a consulting agreement with Mr. Scharpenberg's company to support an Army contract. *Id.* The government became suspicious of Mr. Scharpenberg's time entry and billing and asked McNeil to investigate whether Mr. Scharpenberg was improperly billing for time he did not work. *Id.* As here, McNeil's management investigated, reviewed daily logs of hours and electronic access records, and reported to the government that "[t]he allegations appear to have merit based on documentation captured and provided by Mr. Carrington to McNeil Technologies[.]" *Id.* at 658. Mr. Scharpenberg filed suit for defamation, but the Court dismissed the claim because McNeil was absolutely immune from liability. *Id.* at 660.

Although Mr. Scharpenberg challenged the sufficiency of the investigation and information relied on, as Meadows does here, the court nonetheless concluded that "*Mangold* did not set forth restrictions on *how* a government contractor must comply with an official government inquiry, but only that the contractor is immune from liability for responses to the inquiry." *Id.* at 660. The immunity analysis, of course, remains the same whether the government initiated the inquiry through an individualized request or pursuant to federally-imposed self-reporting obligations. *See Becker*, 372 F.2d at 776 ("[A]n action for libel will not lie in [those] circumstances against a private party fulfilling its governmentally imposed duty to inform.").

Because BAE is entitled to absolute immunity for performing its delegated, federal government function, Meadows' defamation claims, Counts I-II, should be dismissed with prejudice.

### ii. Wrongful Termination (Count III) Is Not Cognizable Under the Federal Enclave Doctrine and BAE Is Absolutely Immune From Liability for Wrongful Termination

In his wrongful termination count, Meadows acknowledges that BAE terminated his employment because, according to BAE, Meadows "violated [BAE's] Code of Conduct and Ethics

policies related to Conflict of Interest" and was found to have "violated [BAE's] Timekeeping policy and mischarged time while [he] worked for BAE." *See, e.g.,* Compl. at Ex. B. Meadows, however, contends that he was terminated for refusing to misappropriate trade secrets and this gives rise to a claim of wrongful termination against BAE. *See generally id.* at Count III. It does not.

### 1. <u>Wrongful Termination Is Not Cognizable Under the Federal Enclave Doctrine</u>

As noted above, "after a state has transferred authority over a tract of land creating a federal enclave, the state may no longer impose new state laws on the land." *JAAAT Tech. Servs., LLC*, 2016 U.S. Dist. LEXIS 41946 at **8-9 (quoting *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1235 (10th Cir. 2012)). Thus, new causes of action, even those developed under the common law after cession, do not apply to the enclave. *Allison*, 689 F.3d at 1243. Because wrongful discharge was not recognized under Virginia common law until 1985 (when the Virginia Supreme Court decided *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985)) and the Arsenal became an enclave in 1942, Meadows cannot state a cognizable wrongful termination claim as a matter of law.

The Tenth Circuit in *Allison* was confronted with the very issue of whether a wrongful discharge claim under New Mexico common law could apply to actions that arose from conduct on Kirtland Air Force Base, a federal enclave established in 1954. *Id.* at 1235, 1244. The plaintiff in *Allison* argued common law wrongful discharge should apply because it is a "modification[] to state law that existed prior to cession rather than new laws." *Id.* at 1242. The Tenth Circuit disagreed stating: "Under Allison's theory … federal enclave law would be infinitely malleable as long as some general legal principle pre-dated the cession of state land." *Id.* at 1243. If such a rule were adopted, it would "swallow the federal enclave doctrine whole." *Cf. Colon v. United*

*States*, 320 F. Supp. 3d 733, 746-47 (D. Md. 2018) (recognizing 28 U.S.C. § 5001 can only be read to waive sovereign immunity for *physical* injuries on federal enclaves because extending it to other injuries would swallow the doctrine and cover "any injury … co-extensive with Article III standing and … '[s]uch a result would be inconsistent with the more than eighty years of Federal Enclave Doctrine jurisprudence.'") (quoting *Shurow v. Gino Morena Enters., LLC*, 2017 U.S. Dist. LEXIS 66165 at *8 (S.D. Cal. 2017)).

Numerous courts have reached similar conclusions with respect to wrongful discharge claims. *See, e.g., Stiefel v. Bechtel Corp.*, 497 F. Supp. 2d 1138, 1149 (S.D. Cal. 2007) (Because "[p]laintiff does not argue that a claim for wrongful termination in violation of public policy comes within a reservation of jurisdiction or that it was adopted by Congress….this claim is barred by the federal enclave doctrine."); *Orlovetz v. Day & Zimmerman, Inc.*, 18 Kan. App. 2d 142, 848 P.2d 463, 466 (Kan. App. 1993) (rejecting a Kansas law wrongful termination claim because "such remedy must have been available in Kansas at the time of the creation of the federal enclave where plaintiff worked.").

The same conclusion follows here. In "*Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (Va. 1985), the Supreme Court of Virginia recognized *for the first time* a 'narrow [wrongful termination] exception' to the at-will employment doctrine." *Sizemore v. Sw. Va. Reg'l Jail Auth.*, 2009 U.S. Dist. LEXIS 12051 at *23 (W.D. Va. 2009) (emphasis added). Because wrongful discharge did not exist under Virginia common law when the Arsenal became an enclave in 1942, Meadows cannot state a cognizable wrongful termination claim as a matter of law.[5]

---

[5] Even if such a claim was theoretically possible, the underlying statutes that form the basis of Meadows' alleged wrongful termination claim likewise post-date cession and, therefore, cannot support his wrongful termination claim under the federal enclave doctrine. Compl. at ¶¶ 156-58 (alleging he was terminated for refusing to misappropriate ATK's trade secrets which would have allegedly violated the Virginia Uniform Trade Secrets Act, Va. Code § 59.1-336, *et seq.* (enacted

### 2. Even if Such A Claim Could Be Asserted Under the Federal Enclave Doctrine, BAE Remains Absolutely Immune From Liability for Wrongful Termination

Even if Meadows could state a wrongful termination claim in the face of the federal enclave doctrine (and he cannot), his claim should be dismissed because BAE remains absolutely immune from liability for wrongful termination under the doctrine of derivative sovereign immunity because it was performing its delegated, federal function when it exercised discretion to terminate Meadows for what BAE contended was "violat[ions of BAE's] Code of Conduct and Ethics policies related to Conflict of Interest." *See, e.g.,* 48 C.F.R. § 52.203-13(b)(1)-(2) (requiring contractors to have an enforce codes of conduct and ethics policies); *Butters*, 1999 U.S. Dist. LEXIS 23721 at *10 (finding a Virginia security contractor was immune from a wrongful termination claim based on derivative sovereign immunity when it refused to place a woman in a security position pursuant to the expressed gender bias from the Saudi royal family she was supposed to guard).

### iii. Statutory Business Conspiracy (Count V) Is Not Cognizable Under the Federal Enclave Doctrine, and BAE Is Absolutely Immune From Liability for Common Law and Statutory Business Conspiracy

### 1. Statutory Business Conspiracy Is Not Cognizable Under the Federal Enclave Doctrine

As with wrongful termination, Meadows' statutory business conspiracy claim under Va. Code §§ 18.2-499, -500 is not cognizable pursuant to the federal enclave doctrine. Statutory business conspiracy claims were first created by the General Assembly in 1950. *See* Va. Code §§ 18.1-74.1:1, -74.1:2 (1950). Because these claims were not in existence in April 1942, when the Arsenal was ceded to the Federal Government, it is not a cognizable claim for actions that arise

---

in 1986), the Virginia Computer Crimes Act, § 18.2-152.1, *et seq.* (enacted in 1984); and the federal Economic Espionage statute, 18 U.S.C. § 1831 (enacted in 1996)).

out of the enclave. *JAAAT Tech. Servs., LLC*, 2016 U.S. Dist. LEXIS 41946 at **8-9 (quoting *Allison*, 689 F.3d at 1235).

## 2. Regardless, BAE Remains Absolutely Immune From Liability for All Alleged Conspiracy Claims

In his conspiracy counts, Meadows alleges that BAE and ATK "conspired to terminate Meadows' employment on 'conflict of interest' grounds," and/or "in concert to defame Meadows." Compl. at ¶¶ 175, 180, 192. As discussed above, BAE is entitled to derivative sovereign immunity when reporting Meadows for fraud, conflict of interest and/or overbilling, and when acting to enforce its conflict of interest policy because all such conduct was delegate from the federal government to BAE. Accordingly, BAE is entitled to derivative sovereign immunity with respect to the alleged conspiracy claims.

### C. Jurisdictional Conclusion

Based on the foregoing, it is clear that Meadows Complaint must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and/or for failure to state a claim pursuant to Rule 12(b)(6) because BAE is absolutely immune from all alleged claims and liability, and the wrongful termination and statutory business conspiracy claims are not even cognizable pursuant to the federal enclave doctrine. Further, it is apparent from the above that Meadows cannot meet his burden of establishing that subject matter jurisdiction exists. Accordingly, his Complaint should be dismissed with prejudice.

## III. Meadows' Wrongful Termination Claim Should Also Be Dismissed Because He Failed to Plausibly Allege That He Can Meet The Limited Exceptions To At-Will Employment

Separate and apart from the federal enclave and derivative sovereign immunity bars to his wrongful termination claim, Meadows' wrongful termination claim should likewise be dismissed pursuant to Rule 12(b)(6) because wrongful termination is a "very limited" exception to the at-will

employment doctrine that applies in only three instances, none of which are plausibly alleged here.

In his Complaint, Meadows alleges he was terminated for refusing to misappropriate ATK's trade secrets. *See generally* Count III. Meadows then claims this conduct would have violated (1) the Virginia Uniform Trade Secrets Act ("VUTSA"), Va. Code § 59.1-336, *et seq.*; (2) the Virginia Computer Crimes Act ("VCCA"), § 18.2-152.1, *et seq.*; and (3) the federal Economic Espionage statute, 18 U.S.C. § 1831.

First, "[i]t is worth emphasizing that a claim under *Bowman* 'must find root in a state statute[]'; it cannot have its genesis in an act of Congress." *Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 450-51 (E.D. Va. 2002) (quoting *McCarthy v. Texas Instruments, Inc.*, 999 F. Supp. 823, 829 (E.D. Va. 1998)); *see also Oakley v. The May Department Stores, Co.*, 17 F. Supp. 2d 533, 536 (E.D. Va. 1998) (explaining that "Title VII [of Civil Rights Act of 1964] cannot be used to support a *Bowman* claim, because the *Bowman* exception ... is predicated on public policies derived from Virginia statutes, not federal laws.") (citations omitted). Thus, under no circumstance can the federal Economic Espionage statute serve as a basis for any Virginia wrongful termination claim. Moreover, because the VUTSA and VCCA are federalized claims within the enclave, they likewise cannot serve as a basis for a Virginia wrongful termination claim. *JAAAT Tech. Servs., LLC*, 2016 U.S. Dist. LEXIS 41946 at *18 ("When exclusive jurisdiction is ceded to the United States, the laws of the state at the time of the cession will continue in effect *as federal law*, and subject matter jurisdiction under 28 U.S.C. § 1331, is proper.") (emphasis altered).

Second, wrongful termination claims can only apply in three instances: "(1) where 'an employer violated a policy enabling the exercise of an employee's statutorily created right[]'; (2) where 'the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection

enunciated by the public policy[]'; and (3) where 'the discharge was based on the employee's refusal to engage in a criminal act.'" *Storey*, 207 F. Supp. 2d at 451 (quoting *Rowan*, 263 Va. 209).

The VTUSA, however, does not confer any right on Meadows as a mere employee that does not own any of the alleged trade secrets. Similarly, the VTUSA does not contain an explicitly expressed public policy and Meadows is not clearly a member of the class of persons the statute was designed to protect. The VTUSA is intended to protect trade secret owners, not those who are allegedly asked to misappropriate trade secrets. Further, the VTUSA does not impose criminal penalties.

Similarly, Meadows cannot rely on the VCCA. Although this statute does include criminal penalties under certain circumstances, Meadows fails to plausibly allege that he was asked to access trade secrets in a manner that would violate the VCCA or otherwise plausibly allege that he was terminated for refusing to engage in such criminal conduct. *See Scates v. Shenandoah Mem'l Hosp.,* 2015 U.S. Dist. LEXIS 141526, at *26-27 (W.D. Va. 2015) (dismissing claim pursuant to Rule 12(b)(6) where plaintiff "fail[ed] to allege any facts to show [her employer] asked or directed her to commit criminal acts," and therefore, failed to plausibly allege she was terminated for refusing to commit a crime).

Meadows, therefore, fails to plausibly plead a claim that falls within any exceptions to the at-will employment doctrine.

## IV. Meadows' Conspiracy Claims Should Also Be Dismissed Because He Fails to Plausibly Allege Unlawful Action Or An Agreement Between BAE And ATK

Finally, Meadows' common law conspiracy and statutory business conspiracy claims should be dismissed pursuant to Rule 12(b)(6) because Meadows fails to plausible allege a conspiracy claim.

Meadows' statutory business conspiracy claim must be dismissed pursuant to Rule

12(b)(6) because "it is well-settled that § 18.2-499 applies only to injuries 'to business and property interests, not to personal or employment interests.'" *Hanger*, 2015 U.S. Dist. LEXIS 68751 at *32 (internal brackets removed) (quoting *Shirvinski*, 673 F.3d at 321); *Andrews v. Ring*, 266 Va. 311, 319 (2003) ("We conclude that the origin of Code §§ 18.2-499 and -500 establishes that they apply to business and property interests, not to personal or employment interests.").

Meadows' common law conspiracy claim must be dismissed because Meadows fails to plausibly allege: (1) an actionable underlying tort, or unlawful act, as required to state a conspiracy claim; or (2) an agreement to conspire beyond mere "allegation[s] of parallel conduct and a bare assertion of conspiracy [which] will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).

"A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to the plaintiff." *Glass v. Glass*, 228 Va. 39, 47, 321 S.E.2d 69, 74 (1984). There is, however, no independent cause of action for conspiracy. *Almy v. Grisham*, 273 Va. 68, 80-81 (2007). "For a conspiracy claim to be viable, the plaintiff must allege all of the elements of the underlying claim [i.e. unlawful act] in order to make a *prima facie* case for conspiracy to commit that [unlawful act]." *Almy v. Grisham*, 55 Va. Cir. 401, 404 (2001), *aff'd and rev'd on other grounds*, 273 Va. 68 (2007) (citing *Commercial Bus. Sys. v. Halifax Corp.*, 253 Va. 292, 300 (1997)). "Even though a conspiracy and its constituent substantive claim turn on independent legal axes, the former cannot exist without proof of the latter." *GIV, LLC v. IBM*, 2007 U.S. Dist. LEXIS 30168 at *18 (E.D. Va. 2007).

In his Complaint, Meadows rests his common law conspiracy claim on two assertions: (1) "BAE and [ATK] conspired to terminate Meadows' employment on 'conflict of interest' grounds, even though both employers [allegedly] knew that Meadows was working contemporaneously for

the other," and (2) "BAE and [ATK] acted in concert to defame Meadows." With respect to the first ground, Meadows fails to state a claim because terminating "on conflict of interest grounds" is not an unlawful act, and it is not unlawful to terminate an at-will employee. Thus, the first ground cannot serve as the foundation for any conspiracy.

With respect to the second ground, Meadows cannot state a defamation claim against BAE for the reasons mentioned above, and Meadows does not even allege a defamation claim against ATK. Thus, defamation likewise cannot serve as the unlawful act required for a common law conspiracy. *See GIV, LLC*, 2007 U.S. Dist. LEXIS 30168 at *18 ("Because the underlying state law claims, on which [plaintiff's] conspiracy claim is based, will be dismissed, [plaintiff's] conspiracy claim must also be dismissed.").

In addition to failing to plausibly allege an unlawful act, Meadows fails to plausibly allege any agreement between BAE and ATK. Instead, Meadows simply alleges that "BAE suspended Meadows and [ATK] fired Meadows within days of each other," and then makes bare assertions that BAE and ATK "conspired." Compl. at ¶¶ 166, 175, 180. This, however, is nothing more than an insufficient "allegation of parallel conduct and a bare assertion of conspiracy [that] will not suffice" to state a claim. *Twombly*, 550 U.S. at 556. The Supreme Court in *Twombly* went on to explain that "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality" because "merely parallel conduct … could just as well be independent action." *Id.* at 557.

Because Meadows merely alleges injury to his employment interests, he cannot state a statutory business conspiracy claim sufficient to survive BAE's 12(b)(6) motion to dismiss. Similarly, because Meadows fails to plausibly allege both unlawful conduct and an agreement

between BAE and ATK at an identified point to accomplish an illegal act, he cannot state a common law conspiracy claim sufficient to survive BAE's 12(b)(6) motion to dismiss.

## **CONCLUSION**

For the foregoing reasons, Defendants BAE Systems, Inc. and BAE Systems Ordnance Systems, Inc. respectfully request that this Court dismiss Plaintiff's Complaint, in its entirety and with prejudice, pursuant to Rule 12(b)(1) and/or Rule 12(b)(6) and award Defendants their attorneys' fees and costs for defending this suit and such other relief as this Court may deem just and proper.

Date:  May 24, 2019                                 Respectfully submitted,

   /s/  Joshua R. Treece
Thomas M. Winn, III, Esq. (VSB # 35758)
winn@woodsrogers.com
Joshua R. Treece, Esq. (VSB #79149)
jtreece@woodsrogers.com
WOODS ROGERS PLC
10 South Jefferson Street, Suite 1400
Roanoke, Virginia 24011
Telephone:  (540) 983-7529
Facsimile: (540) 983-7711

*Counsel for Defendants BAE Systems, Inc.*
*and BAE Systems Ordnance Systems, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 24th day of May, 2019, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

_/s/_  Joshua R. Treece