IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **JEFFREY S. MEADOWS** | )<br>) |
| **Plaintiff,** | )<br>)<br>) |
| v. | )<br>) |
| **NORTHROP GRUMMAN INNOVATION SYSTEMS, INC.,** | )<br>)<br>)<br>) Civil Action No. 7:19-cv-00394 |
| **BAE SYSTEMS, INC.,** | )<br>)<br>) |
| and | )<br>)<br>) |
| **BAE SYSTEMS ORDNANCE SYSTEMS, INC.,** | )<br>)<br>)<br>) |
| **Defendants.** | ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT NORTHROP GRUMMAN INNOVATION SYSTEMS, INC.'S MOTION TO DISMISS**

COMES NOW, Jeffrey S. Meadows ("Meadows"), by counsel, and files this Memorandum in Opposition to Defendant Northrop Grumman Innovation Systems, Inc.'s Motion to Dismiss ("Motion"). Defendant Northrop Grumman Innovation Systems, Inc ("NGIS"), having joined co-defendants BAE Systems, Inc. and BAE Systems Innovation Systems, Inc. (collectively, "BAE") in removing this action from the Montgomery County Circuit Court to this Court (*See* Notice of Removal, ECF No. 1), have also moved to dismiss Meadows' Amended Complaint (*See* Motion, ECF No. 3). NGIS asserts that dismissal is required pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on a number of purported grounds. For the reasons that follow, NGIS's Motion should be denied in its entirety.

1

## FACTS AND PROCEDURAL HISTORY

This is an action for defamation, defamation *per se*, wrongful discharge, common law conspiracy, and business conspiracy under Virginia Code § 18.2-500, related to Meadows' employment history with Defendants[1] and Defendants' improper actions following their near-simultaneous discharge of Meadows' employment with Orbital ATK and BAE, Inc. ("Orbital ATK"), NGIS's predecessor in interest. The facts of this case are fully alleged in Meadows' Amended Complaint[2] and summarized herein.

In 2007, Meadows began working for Orbital ATK. (*See* Amended Complaint ¶ 10). As an Orbital ATK employee, Meadows worked on, among other things, proposals related to the operation, management, and modernization of facilities, and in various locations, including Virginia, Australia, and Utah. (*Id.* at ¶¶ 11–13). Orbital ATK also allowed Meadows to work remotely from his home in Montgomery County, Virginia, in exchange for remaining at Orbital ATK when Meadows had desired to accept a job with BAE. (*Id.* at ¶¶ 17–20). Later, however, Meadows decided to take a job with BAE, and informed both Orbital ATK and BAE of his impending dual employment. (*Id.* at ¶¶ 24–26). As a BAE employee, Meadows either worked on site at the Radford Army Ammunition Plant ("Arsenal") or remotely from his home in Montgomery County, Virginia. (*Id.* at ¶ 28).

Independent of Meadows' disclosures to Orbital ATK and BAE, BAE knew that Meadows also worked for Orbital ATK because, on more than one occasion, Meadows' supervisors at BAE asked Meadows to provide confidential, proprietary Orbital ATK information for BAE's own

---

[1] As explained herein, Meadows was employed by Defendant BAE Systems, Inc. through its subsidiary, BAE Systems Ordnance Systems, Inc., and by Orbital ATK, Inc., the predecessor in interest of Defendant Northrup Grumman Innovation Systems, Inc.

[2] The Amended Complaint is attached to Defendants' Notice of Removal. (*See* ECF No. 1, Ex. A.).

benefit. (*See id.* at ¶¶ 39–52). For example, in 2016, Meadows' supervisor at BAE, Michael Bate, asked Meadows to provide an Orbital ATK acid facility modernization proposal, which Meadows refused to do, a clear indication that BAE knew that Meadows was simultaneously employed by Orbital ATK. (*Id.* at ¶¶ 41-42).

Despite this prior knowledge, BAE discharged Meadows on June 23, 2017, by a letter that Meadows received at his home in Montgomery County, Virginia, ostensibly for Meadows' purported violation of BAE's conflict of interest disclosure policy; the other ostensible reason was Meadows' purported violation of BAE's timekeeping policy. (*Id.* at ¶ 56; Ex. B). This discharge was preceded by Meadows' being escorted out of the Arsenal, without explanation, on May 1, 2017, and BAE temporarily suspending Meadows. (*Id.* at ¶¶ 53–54).

BAE's discharge of Meadows was precipitated by Orbital ATK reporting to BAE that Meadows had accepted a new, full-time position with Consolidated Nuclear Security, LLC ("CNS"), a company affiliated with Orbital ATK. (*Id.* at ¶¶ 63–65). In fact, although Meadows was considering that position, he ultimately did not accept it, motivating Orbital ATK to retaliate against Meadows by informing BAE that he had. (*Id.*). In this way, Orbital ATK conspired with BAE to have Meadows wrongfully discharged. BAE, however, had additional, independent motives to discharge Meadows, particularly Meadows' failure to provide BAE with confidential, proprietary Orbital ATK documents. (*See id.* at ¶¶ 39–52, 160, 164).

Defendants' improper actions did not end with Meadows' discharge, however. On July 25, 2017, BAE notified the Office of Inspector General of the Department of Defense ("DOD"), on its own initiative, alleging that Meadows was employed by Orbital ATK while working for BAE without BAE's knowledge or permission, and that Meadows had mischarged his time related to

3

"non-work activities" while employed by BAE. (*Id.* at ¶ 71). Contrary to BAE's characterization,[3] this was not a *mandatory disclosure* because the allegations were false and a mere pretense for BAE's discharge of Meadows as retaliation for his failure to provide BAE with confidential, proprietary Orbital ATK documents. Indeed, BAE's communications to the DOD and Department of Navy ("DON") included several misrepresentations. (*See id.* at ¶¶ 78–83; Ex. E). Ultimately, the DON determined that the evidence did not support BAE's allegations. (*Id.* at ¶ 87; Ex. G).

Based on these facts, and others alleged in the Amended Complaint, Meadows filed his Complaint in the Montgomery County Circuit Court for defamation, defamation *per se*, wrongful discharge, common law conspiracy, and business conspiracy under Virginia Code § 18.2-500, all claims arising under Virginia law, on May 11, 2018. Prior to serving Defendants, Meadows amended his Complaint and filed his Amended Complaint in the Montgomery County Circuit Court on April 24, 2019. Subsequently, BAE filed, and NGIS consented to, a Notice of Removal,[4]

---

[3] (*See, e.g.*, Notice of Removal, ECF No. 1, at ¶ 9).

[4] Attached to Defendants' Notice of Removal as Exhibit B is the Declaration of Matt Linkous. (*See* ECF No.1-2). Such declarations are permitted pursuant to 28 U.S.C. § 1746. However, that statute provides that such declarations *must* be dated. *See id.* (" . . . [S]uch matter may . . . be supported . . by the unsworn declaration . . . in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: . . . "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)."). The Declaration of Matt Linkous, however, does not contain the "Executed on: (date)" language required by 28 U.S.C. § 1746. Accordingly, this Court should not consider the Declaration of Matt Linkous in ruling upon Meadows' Motion to Remand, Defendants' respective Motions to Dismiss (ECF Nos. 3 and 5), or any other matter. *See, e.g.*, *Rivera v. Allstate Ins. Co.*, 140 F. Supp. 3d 722, 729 (N.D. Ill. 2015) ("The consequence of the Rivera and Scheuneman declarations being undated. . . is that the declarations are not evidence and thus will be disregarded on summary judgment."); *Globalaw Ltd. v. Carmon & Carmon Law Office & Globalaw, Inc.*, 452 F. Supp. 2d 1, 28 n.11 (D.D.C. 2006) (noting that an undated affidavit was "in violation of 28 U.S.C. § 1746"); *Orr v. Orbis Corp.*, No. 1:07-CV-2653-TWT-SSC, 2010 U.S. Dist. LEXIS 86990, at *8 (N.D. Ga. July 30, 2010) ("Because the Simmons and Watson Declarations are not dated or signed, the court will not consider them in addressing Defendants' motion or Plaintiff's response . . . .").

thereby removing this action from the Montgomery County Circuit Court to this Court. That same day, NGIS filed its Motion to Dismiss (ECF No. 3) and Memorandum in Support (ECF No. 4).

## ARGUMENT[5]

At the outset, Meadows must reassert that, for the reasons articulated in his contemporaneously filed Motion to Remand and Memorandum in Support thereof, this Court lacks subject-matter jurisdiction over this action, and must therefore remand this action back to the Montgomery County Circuit Court from whence it was removed. It necessarily follows that this Court cannot consider NGIS's Motion to Dismiss or any of the legal arguments presented therein. Given the uncommon procedural posture of this case, however, Meadows has agreed to submit his response to NGIS's Motion to Dismiss together with his Motion to Remand, so that this Court may address any overlapping issues efficiently in the event it denies Meadows' Motion to Remand. Thus, the arguments presented below assume, for the purposes of this Memorandum only, that this Court possesses subject-matter jurisdiction over this action.

First, NGIS argues that Meadows' conspiracy claims (Counts IV and V) are not sufficiently pled. With respect to common law conspiracy, NGIS claims that Meadows has failed to plead underlying tortuous or unlawful actions and an agreement to conspire. With respect to business conspiracy, NGIS asserts that Virginia Code § 18.2-499 does not apply to the injuries alleged by Meadows. These arguments fail, however, because (1) Orbital ATK[6] and BAE engaged in tortuous acts, namely, those alleged in the other counts of the Amended Complaint; (2) the facts pled by

---

[5] NGIS has joined in and incorporated by reference Defendant BAE Systems, Inc.'s and BAE Systems Ordnance Systems, Inc.'s Motion to Dismiss (ECF No. 5) and Memorandum in Support thereof (ECF No. 6). To the extent this requires a response from Meadows, Meadows relies upon the arguments and authorities presented in his contemporaneously filed Memorandum in Opposition to Defendant BAE Systems, Inc.'s and BAE Systems Ordnance Systems, Inc.'s Motion to Dismiss.

[6] As noted above, Orbital ATK was the predecessor in interest to Defendant NGIS.

5

Meadows demonstrate coordinated, not merely "parallel," actions on the part of Orbital ATK and BAE; and (3) the plain language of Virginia Code §§ 18.2-499 and 18.2-500 provides a remedy for the injuries suffered by Meadows.

Second, NGIS asserts that Meadows' claim for business conspiracy is not cognizable under the federal enclave doctrine. Under the federal enclave doctrine, certain land ceded by one of the several States to the United States becomes subject to exclusive federal jurisdiction. Here, and in the Notice of Removal to which they joined, NGIS contends that the Arsenal in Radford, Virginia, is a federal enclave, and that because (1) Meadows' employment with BAE required Meadows, at times, to work at the Arsenal, and (2) Meadows' conspiracy claims revolve around his employment at the Arsenal, all of his claims are subject to exclusive federal jurisdiction, despite the fact that Meadows' Amended Complaint, on its face, brings claims under Virginia law. This argument fails, as an initial matter, because NGIS has not shown that the Arsenal or, more specifically, "Building 220," where Meadows worked while on site at the Arsenal,[7] is a federal enclave. More importantly, NGIS has not shown that Meadows' claim for business conspiracy arose in the Arsenal at all.

Third, NGIS asserts that Meadows' conspiracy claims must be dismissed because Meadows has alleged no underlying tort. NGIS argues that (1) Meadows' allegations do not satisfy the elements for wrongful discharge as articulated by the Supreme Court of Virginia in *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985); and (2) BAE's defamation of

---

[7] NGIS, with BAE, essentially argues that certain of Meadows' claims arose in a federal enclave because of Meadows' work-related activities in "Building 220" of the Arsenal. (*See* Notice of Removal, ECF No. 1). Thus, the only relevant question for the purposes of this action is whether "Building 220" of the Arsenal is located on a federal enclave.

6

Case 7:19-cv-00394-MFU   Document 21   Filed 07/26/19   Page 6 of 16   Pageid#: 1151

Meadows was not unlawful because BAE is entitled to "derivative sovereign immunity"[8] due to its status as a government contractor.

With respect to wrongful discharge, Meadows' claim is the exemplary *Bowman* case. BAE's termination of Meadows' employment for Meadows' refusal to engage in unlawful acts amounting to corporate espionage was in clear violation of the Commonwealth of Virginia's laws and public policy. Therefore, this argument also fails. With respect to derivative sovereign immunity, NGIS extends the doctrine beyond its proper scope, as none of BAE's tortious activities were done at the instruction of the federal government. As discussed in Meadows' contemporaneously filed Memorandum in Opposition to Defendant BAE Systems, Inc.'s and BAE Systems Ordnance Systems, Inc.'s Motion to Dismiss, granting BAE derivative sovereign immunity under the circumstances alleged by Meadows would essentially grant that doctrine's protection to *any* conduct of *any* government contractor, even if only tangentially related to the contractor's work for the United States. Accordingly, this argument must be rejected.

Finally, NGIS asserts that Meadows has not alleged damages caused by the acts committed in furtherance of the conspiracy between Orbital ATK and BAE.

---

[8] So-called "derivative sovereign immunity" stems from the Supreme Court's decision in *Yearsley v. W. A. Ross Constr. Co.*, 309 U.S. 18, 20-21 (1940), a case which held that agents of the United States are also sometimes protected from liability for carrying out its will. *See Cunningham v. Gen. Dynamics Info. Tech.*, 888 F.3d 640, 643 (4th Cir. 2018) (discussing *Yearsley*). However, the Supreme Court has never called the doctrine it developed in *Yearsley* "derivative sovereign immunity"; indeed, even in its most recent decision affirming the *Yearsley* doctrine, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016), the Supreme Court did not adopt the phrase for itself, but only referenced its use by the parties and the lower court. *See also Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015) (noting that *Yearsley* "does not address sovereign immunity"). While for the purposes of this Memorandum Meadows will refer to this doctrine as "derivative sovereign immunity," as BAE has, the use of this label has no bearing on Meadows' position that so-called "derivative sovereign immunity" is not akin to the jurisdictional doctrine of sovereign immunity.

Therefore, NGIS's Motion to Dismiss should be denied in its entirety.

## I. Legal Standard Under Rules 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint, *see Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008), and should be denied unless it appears that plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *See De Sole v. United States,* 947 F.2d 1169, 1177 (4th Cir. 1991); *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). A court reviewing a complaint on a Rule 12(b)(6) motion must assume the veracity of well-pleaded allegations and must construe factual allegations in favor of plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). A court must also mind the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. NGIS Has Not Established That the Arsenal is a Federal Enclave; Even if the Arsenal is a Federal Enclave, Meadows' Claims Did Not Arise Therein

Meadows addresses the related issues of (1) whether the Arsenal is a federal enclave and (2) whether Meadows claims arose in the Arsenal in his contemptuously filed Motion to Remand and Memorandum in Support thereof. Meadows incorporates by reference the arguments and authorities set forth in his contemptuously filed Motion to Remand and Memorandum in Support thereof as if fully set forth in this Memorandum.

8

### III. Meadows Has Sufficiently Pled the Elements of Conspiracy and Business Conspiracy in Violation of Virginia Code § 18.2-500, and He Has Pled Both Claims Consistent with Federal Pleading Standards

Counts IV and V of Meadows' Amended Complaint are for common law conspiracy and business conspiracy pursuant to Virginia Code § 18.2-500.[9] These claims arise from Orbital ATK and BAE conspiring to discharge Meadows from his respective employment with each company on false "conflict of interest" grounds. (*See* Amended Complaint ¶ 175). These false grounds later served, in part, as the basis for BAE's defamatory communications to the DOD and DON. Meadows suffered a number of injuries as a result of this conspiracy, including those to his reputation, trade, business, and profession.

#### A. The Plain Language of Virginia Code § 18.2-500 Supports Meadows' Claim for Business Conspiracy

Virginia Code § 18.2-499 provides that

> [a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act, shall be jointly and severally guilty of a Class 1 misdemeanor. Such punishment shall be in addition to any civil relief recoverable under § 18.2-500.

And, pursuant to Virginia Code § 18.2-500,

> [a]ny person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel, and without limiting the generality of the term, "damages" shall include loss of profits.

NGIS cites cases for the proposition that the injuries described in Virginia Code §§ 18.2-499 and 18.2-500 only apply when the malicious conduct is focused on one's business. *See,*

---

[9] Because the same analysis for the purposes of removal and remand applies to both claims, Meadows will discuss these claims together as conspiracy.

*e.g.*, *Andrews v. Ring*, 266 Va. 311, 319 (2003). Meadows acknowledges *Andrews* and the federal cases that have cited it, but maintains that the plain language of the statute addresses "*reputation, trade*, business *or profession*." Va. Code § 18.2-499 (emphasis added). The Amended Complaint describes how Orbital ATK and BAE's conspiracy damaged Meadows in his reputation, trade, and profession, in that as a result of defamation and the termination of his employment with both Orbital ATK and BAE, Meadows (1) was unable to accept certain employment offers during the pendency of debarment proceedings; and (2) is still unable to accept certain employment offers due to Orbital ATK's placing of negative and false comments regarding Meadows in the Joint Personnel Adjudication System. (*See* Amended Complaint, ¶¶ 91-92). In short, the fact that Orbital ATK and BAE's conspiracy damaged Meadows' professional reputation puts such conduct squarely within the plain language of Virginia Code §§ 18.2-499 and 18.2-500.

### B. Meadows' Conspiracy Claims Satisfy the Liberal Rule 12(b)(6) Pleading Standard

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985). Torts, of course, may constitute the unlawful purpose element of a conspiracy claim. *See, e.g.*, *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 215, 754 S.E.2d 313, 317 (2014) (noting that "actions for common law civil conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious").

NGIS argues that Meadows has failed to allege an agreement between Orbital ATK and BAE. NGIS correctly notes that parallel conduct, by itself, cannot constitute a conspiratorial agreement. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("**Without more**,

parallel conduct does not suggest conspiracy . . . ." (emphasis added)). By the same token, parallel conduct *can* suffice when "accompanied by 'plus factors.' While the Supreme Court has not recounted a list of plus factors, numerous plus factors, such as 'motive to conspire,' 'opportunity to conspire,' 'high level of interfirm communications,' irrational acts or acts contrary to a defendant's economic interest, but rational if the alleged agreement existed, and departure from normal business practices, have been considered by other circuits." *Merck-Medco Managed Care, LLC v. Rite Aid Corp.*, No. 98-2847, 1999 U.S. App. LEXIS 21487, at *26 (4th Cir. Sep. 7, 1999).

Contrary to NGIS's contention that Meadows has merely alleged "parallel conduct," Meadows alleges a number of facts signifying an agreement between Orbital ATK and BAE. For instance, there were interfirm communications in that Orbital ATK contacted BAE to discuss Meadows' dual-employment shortly before Meadows was terminated by Orbital ATK and escorted off-site by BAE, a prelude to his eventual termination by BAE. (*See* Amended Complaint, ¶¶ 53-56, 63-64). In addition, both Orbital ATK and BAE had independent motives to conspire against Meadows, namely Meadows' refusal to take the job at Orbital ATK's affiliate, CNS, and Meadows' refusal to engage in corporate espionage. (*See id.* at ¶¶ 39-52, 58-70). These, coupled with Meadows' other allegations, such as the parallel conduct of Orbital ATK and BAE each terminating Meadows, sufficiently allege an agreement and concerted action between Orbital ATK and BAE under the Rule 12(b)(6) standard.

NGIS also seeks dismissal of Meadows' conspiracy claims on the basis that Meadows purportedly does not allege that Orbital ATK and BAE conspired to do any unlawful acts. However, as set forth in his contemptuously filed this Memorandum in Opposition to Defendant BAE Systems, Inc.'s and BAE Systems Ordnance Systems, Inc.'s Motion to Dismiss, which is incorporated by reference as if fully set forth in this Memorandum, Meadows' allegations of

11

defamation and wrongful discharge against BAE satisfy this element of his conspiracy claims. To the extent NGIS bases its Motion on the fact that Meadows brought no defamation or wrongful discharge claims against it, that is immaterial. Under Virginia law, "while there must be proof of the underlying tort, the plaintiff is not required to plead a separate count, or be awarded a recovery, for the underlying tort." *Lance v. Wells Fargo Bank, N.A.*, 99 Va. Cir. 115, 124 (Chesapeake 2018); *see also* Witcher v. Reid, 70 Va. Cir. 415, 418 (Norfolk City 2006) ("In *Commercial Business Systems* [*v. Halifax Corp.*, 253 Va. 292, 300, 484 S.E.2d 892, 896 (1997)], the Supreme Court of Virginia Court stated that 'without ***proof*** of the underlying tort, there can be no conspiracy to commit that tort.' . . . Therefore, the viability of the conspiracy claim ***does not rest on pleading*** or collecting on the underlying tort claim ***but on showing*** that the underlying elements of that claim are present." (emphasis added)).

### IV.    Meadows Claim for Business Conspiracy in Violation of Virginia Code § 18.2-500 Is Not Preempted Under the Federal Enclave Doctrine

NGIS contends that Meadows' claim of business conspiracy (Count V) is preempted by the federal enclave doctrine because the claim arose in the Arsenal, a purported federal enclave, and did not exist as causes of action in Virginia at the time the United States purportedly acquired exclusive jurisdiction over the Arsenal—or, more specifically, "Building 220," where Meadows' worked while on site at the Arsenal. However, as set forth in his contemptuously filed Motion to Remand and Memorandum in Support thereof, which is incorporated by reference as if fully set forth in this Memorandum, NGIS has not shown that the Arsenal was a federal enclave at any time relevant to this action. Moreover, Meadows' claim of business conspiracy did not arise in the Arsenal; therefore, it is not preempted. Accordingly, NGIS's basis for dismissing Meadows' claim of business conspiracy must be rejected.

12

## V. NGIS Cannot Avoid Liability Under the Doctrine of Derivative Sovereign Immunity

NGIS contends that, to the extent Meadows' conspiracy claims are premised on his allegations of defamation and defamation *per se* against BAE, BAE is entitled to derivative sovereign immunity and, as such, defamation cannot serve as the underlying unlawful act for his conspiracy claims. However, as set forth in his contemptuously filed this Memorandum in Opposition to Defendant BAE Systems, Inc.'s and BAE Systems Ordnance Systems, Inc.'s Motion to Dismiss, which is incorporated by reference as if fully set forth in this Memorandum, BAE is not entitled to derivative sovereign immunity for the defamatory statements it made to the DOD and DON. Accordingly, this ground offered by NGIS for dismissing Meadows' conspiracy must also be rejected.

## VI. Meadows Has Sufficiently Alleged Damages

Finally, NGIS contends that Meadows has failed to plead any damages resulting from the acts committed by Orbital ATK and BAE in furtherance of their conspiracy. Meadows does not dispute that an action for common law civil conspiracy lies only if damages are sustained as a result of a wrongful or tortious act. *Dunlap*, 287 Va. at 215, 754 S.E.2d at 317. NGIS's contention, however, is without merit, as Meadows' Amended Complaint alleges both damages and a causal connection between those damages and Orbital ATK and BAE's conduct.

First, Meadows does not allege he would have been offered more lucrative job offers but-for Orbital ATK's (and BAE's) conduct; it is unclear where, in Meadows' Complaint, NGIS has inferred such an allegation. Meadows *has* alleged that since his wrongful discharge by Orbital ATK and BAE, he has only been able to find employment offering significantly less wages than

13

his employment with Orbital ATK and BAE. That, of course, is directly linked to one of the ends of the conspiracy—Meadows' being wrongfully discharged.[10]

Second, with regard to Meadows' allegation that he was forced to wrongfully reimburse Orbital ATK for purportedly overpaid pages, NGIS questions why Meadows repaid Orbital ATK in the first place. Such victim-blaming can result only from NGIS's misreading, or, more likely, ignoring of the Amended Complaint's clear allegations: "Orbital ATK requested repayment of Meadows' normal wages, which it cited as overpayment. . . . Meadows emailed Orbital ATK, denying that Orbital ATK had overpaid him and citing time charged and monies due himself. Nevertheless, after Orbital ATK did not respond to Meadows' inquiry or written response, but instead turned the request for refund over to a collection agency, Meadows relented and submitted a $4,948.65 payment to Orbital ATK." (Amended Complaint, ¶¶ 68-70). These damages, again, stemmed from the conspiracy because they resulted from the underlying wrong—Meadows' being wrongfully discharged.

In sum, Meadows' Amended Complaint clearly alleges damages resulting from Orbital ATK's and BAE's conspiracy to, among other bad acts, defame and wrongfully terminate him. NGIS's argument to the contrary is without merit and should be rejected by this Court as a ground for dismissal.

## CONCLUSION

For the foregoing reasons, Plaintiff Jeffrey S. Meadows respectfully requests that this Court deny Defendant Northrop Grumman Innovation Systems, Inc.'s Motion to Dismiss in its entirety.

---

[10] To the extent NGIS maintains that Meadows' damages for conspiracy cannot have resulted from wrongful discharge, *see* Section III of this Memorandum, *supra*.

14

Respectfully submitted,

JEFFREY S. MEADOWS

By: /s/Daniel J. Martin
       Of Counsel

John R. Thomas, Jr. (VSB #75510)
Hafemann Magee & Thomas, LLC
11 Franklin Road, SW
P.O. Box 8877
Roanoke, Virginia 24014
(540) 759-1660 (telephone)
(843) 645-6530 (facsimile)
jt@fed-lit.com

John P. Fishwick, Jr. (VSB #23285)
Monica L. Mroz (VSB #65766)
Carrol M. Ching, Esquire (VSB #68031)
Daniel J. Martin (VSB #92387)
Fishwick & Associates PLC
30 Franklin Road, Suite 700
Roanoke, Virginia 24011
(540) 345-5890 (telephone).
(540) 345-5789 (facsimile).
John.fishwick@fishwickandassociates.com
Monica.mroz@fishwickandassociates.com
Carrol.Ching@fishwickandassociates.com
Daniel.martin@fishwickandassociates.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

        By:    /s/Daniel J. Martin
                Daniel J. Martin (VSB #92387)
                Fishwick & Associates PLC
                30 Franklin Road, Suite 700
                Roanoke, Virginia 24011
                (540) 345-5890 (telephone).
                (540) 345-5789 (facsimile).
                Daniel.martin@fishwickandassociates.com

16

Case 7:19-cv-00394-MFU   Document 21   Filed 07/26/19   Page 16 of 16   Pageid#: 1161