CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 29 2020

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JEFFREY S. MEADOWS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:19-cv-00394 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| NORTHROP GRUMMAN ) | Chief United States Judge |
| INNOVATION SYSTEMS, INC., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter comes before the court on plaintiff Jeffrey Meadows' motion to remand, ECF No. 19, defendant Northrop Grumman Innovation Systems, Inc.'s ("NGIS") motion to dismiss, ECF No. 3, and defendant BAE Systems, Inc.'s ("BAE") motion to dismiss, ECF No. 5. For the reasons stated below, the court will **GRANT** (i) Meadows' motion to remand in part as it pertains to the defamation claims, (ii) NGIS's motion to dismiss in part as it relates to the business conspiracy and common law conspiracy claims, and (iii) BAE's motion to dismiss in part as it relates to the wrongful termination, business conspiracy, and common law conspiracy claims and **DENY** (i) Meadows' motion to remand in part as it pertains to the wrongful termination, business conspiracy, and common law conspiracy claims and (ii) BAE's motion to dismiss in part as it relates to the defamation claims.

I.

Meadows filed his original complaint in the Montgomery County Circuit Court on May 11, 2018, and an amended complaint on April 24, 2019. Meadows' complaint contains five

counts: Counts I and II claim a violation of state common law for defamation and defamation per se against BAE; Count III claims a violation of state common law for wrongful discharge under Bowman v. State of Keysville, 299 Va. 534, 331 S.E.2d 797 (1985), against BAE; and Counts IV and V claim a violation of state common law and statutory law for business conspiracy against both BAE and NGIS. On May 24, 2019, this case was removed from the Montgomery County Circuit Court upon BAE's motion and NGIS's consent. NGIS and BAE then filed separate motions to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). Meanwhile, Meadows filed a motion to remand the case to state court for lack of subject matter jurisdiction.

Meadows began his employment with Orbital ATK, Inc. ("Orbital ATK"), NGIS's predecessor in interest, in 2007 in Radford, Virginia as a scientist before being assigned to projects in Australia in 2010 and Utah in 2015. ECF No. 16, at 116. He then accepted a position with BAE in Radford, Virginia at the Radford Arsenal[1] in December 2015 and resigned in writing to Orbital ATK. Id. at 117. However, according to Meadows, upon request from Orbital ATK, he agreed to maintain employment with Orbital ATK while simultaneously working for BAE. Id. at 118. Meadows asserts that he informed both parties of his concurrent employment, which he maintained until his eventual termination by both BAE and Orbital ATK in 2017. Id.

In his amended complaint, Meadows alleges that BAE wrongfully terminated and defamed him, and that BAE conspired with Orbital ATK to do so. Id. at 129-42. Meadows

---

[1] The Radford Arsenal, or Radford Army Ammunition Plant, is an ammunitions manufacturing complex for the United States military. It is currently operated by BAE.

2

alleges that during his concurrent employment with BAE and Orbital ATK, BAE asked Meadows multiple times to provide them with proprietary Orbital ATK documents, which he refused to do. Id. at 120. On May 1, 2017, Orbital ATK, in retaliation for Meadows not taking a new job, falsely reported to BAE that Meadows had accepted the job. Id. at 123.[2] On May 4, 2017, Orbital ATK fired Meadows. Id. at 124.

BAE also suspended Meadows on May 1, 2017 based on the alleged conduct. ECF No. 20, at 3. On June 23, 2017, BAE terminated Meadows through a letter delivered to his home in Montgomery County, Virginia on conflict of interest grounds for his continuing employment with Orbital ATK. ECF No. 16, at 135-37. According to Meadows, BAE then made a false report to the Department of Defense's ("DOD") Office of the Inspector General located in Alexandria, Virginia on July 25, 2017, and to the Department of the Navy ("DON"), in Washington, D.C., resulting in a debarment proceeding. Id. at 129-35. The debarment proceeding prevented Meadows from obtaining further employment. Id. Finally, Meadows alleges he is entitled to both compensatory and punitive damages in the amount of $12,218,083.34 stemming from the defendants' wrongful discharge, defamation, and conspiracy. Id. at 142.

Meadows asks the court to remand this case to the Circuit Court for Montgomery County for lack of jurisdiction because the amended complaint only brings claims under Virginia common and statutory law. In response, NGIS and BAE argue that the claims arose

---

[2] Meadows alleges that his discharge from BAE was precipitated by "Orbital ATK reporting to BAE that Meadows had accepted a new, full-time position" with an Orbital ATK affiliate. ECF No. 20, 3. Meadows states that he was considering the position, and when he informed Orbital ATK that he would not accept the new position, it "motivate[ed] Orbital ATK to retaliate against Meadows by informing BAE that he had" accepted the job. Id.

at the Radford Arsenal and that the Radford Arsenal is a federal enclave, subject to exclusive federal jurisdiction. Meadows argues that the Radford Arsenal is not a federal enclave, and, even if it is a federal enclave, his claims did not arise there. NGIS and BAE also seek to dismiss Meadows' complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).

## II.

A.  Federal Enclave Jurisdiction

Meadows asserts that this court lacks subject matter jurisdiction over this case because his amended complaint alleges state law claims against BAE and NGIS. Meadows also argues that the events leading to his amended complaint did not occur at the Radford Arsenal or, in the alternative, that the Radford Arsenal is not a federal enclave. Meanwhile, BAE and NGIS allege that the events leading to Meadows' claims all occurred at the Radford Arsenal, and that the Radford Arsenal is a federal enclave subject to exclusive federal jurisdiction. As a threshold issue for Meadows' motion to remand and defendants' motions to dismiss, the court must determine if it has subject matter jurisdiction over the claims.

Article I, Section 8 of the United States Constitution provides that "Congress shall have Power . . . [t]o exercise exclusive Legislation . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, [D]ock-Yards, and other needful Buildings." U.S. Const. art. I, § 8, cl. 17. When the federal government obtains land from the states for federal use, the land becomes a federal enclave, and the federal government may exercise exclusive jurisdiction. See Surplus Trading Co. v. Cook, 281 U.S. 647, 652 (1930) ("It long has been settled that, where lands for such a purpose are purchased by the United States with the consent of the state legislature, the

jurisdiction theretofore residing in the state passes, in virtue of the constitutional provision, to the United States, thereby making the jurisdiction of the latter the sole jurisdiction"); see also Hall v. Coca-Cola Co., No. 18-cv-244, 2018 WL 4928976, at *2 (E.D. Va. Oct. 11, 2018) ("Courts, including the United States Court of Appeals for the Fourth Circuit, have held that federal courts have federal question jurisdiction over tort claims that arise on federal enclaves.") (citing Stokes v. Adair, 265 F.2d 662, 665-66 (4th Cir. 1959)); Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1250 (9th Cir. 2006) ("Federal courts have federal question jurisdiction over tort claims that arise on federal enclaves.").[3] "To exercise federal legislative jurisdiction on enclaves, (1) the federal government must acquire land within a state, (2) the state must cede or consent to federal jurisdiction over the land, and (3) the federal government must accept jurisdiction." Hall, 2018 WL 4928976, at *2 (citing Paul v. United States, 371 U.S. 245, 264, 267 (1963)). The Supreme Court found that "if the United States acquires with the consent of the state legislature land within the borders of that State by purchase or condemnation for any of the purposes mentioned in Art. I, § 8, cl. 17 . . . the jurisdiction of the Federal Government becomes exclusive." Paul, 371 U.S. at 264.

When a state cedes control over a tract of land to the federal government and it becomes a federal enclave, "only the state law in effect at that time of the transfer of jurisdiction continues in force as surrogate federal law, provided that the state law does not conflict with federal policy." Parker Drilling Management Services, Ltd. V. Newton, -- US --, 139 S.Ct. 1881, 1890 (2019); see also Paul, 371 U.S. at 268 ("[O]nly state law existing at the

---

[3] The court has omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

time of the acquisition remains enforceable, not subsequent [state] laws."). From the acquisition date on, only federal law applies. See Stokes., 265 F.2d at 665 ("It is also clear that only the state laws in effect at the time of the transfer of jurisdiction continue in effect and that subsequent statutes of the state are not part of the laws of the ceded area unless Congress takes action to keep them current."); Allison v. Boeing Laser Tech. Servs., 689 F.3d 1234, 1235 (10th Cir. 2012) ("The central principle of federal enclave doctrine is that Congress has exclusive legislative authority over these enclaves. But in the absence of applicable federal legislation displacing state law, those state laws that existed at the time that the enclave was ceded to the federal government remain in force.").

Here, while employed by defendants, Meadows worked out of building 220 at the Radford Arsenal.[4] The record indicates that pursuant the 1942 Deed of Cession, ECF No. 20, at 11, the Radford Arsenal, including building 220, was ceded to the United States and the United States obtained exclusive federal jurisdiction over it.[5] Further, in Adams v. Alliant Techsystems Inc., 218 F.Supp.2d 792, 795-96 (W.D. Va. 2002), the court found that the Radford Arsenal was a federal enclave. Meadows does not dispute the court's finding, but rather argues that there is insufficient evidence to support the conclusion that the Radford Arsenal remained a federal enclave in 2016 and 2017, the relevant time period for the claims asserted.

---

[4] Meadows alleges that he worked remotely from his home in Montgomery County from time to time. While this may be true, it is immaterial to the analysis of the Radford Arsenal's status as a federal enclave.
[5] The Commonwealth of Virginia ceded jurisdiction to the United States pursuant to its retaining jurisdiction solely with regard to the service of civil or criminal process. See Adams, 218 F.Supp.2d at 795.

Relying on the Supreme Court's decision in Paul, 371 U.S. at 264-67, the court concludes that the defendants have met their burden in establishing that the Radford Arsenal was a federal enclave in 2016 and 2017. First, the 1942 Deed of Cession makes clear that the United States purchased the Radford Arsenal from the Commonwealth of Virginia. Further, as the court found in Adams, 218 F.Supp.2d at 795, the Commonwealth of Virginia ceded federal jurisdiction over the land, and the federal government accepted exclusive jurisdiction over the ceded land. Meadows does not provide any evidence that the status of the Radford Arsenal has changed since 2002, when the Adams case was decided. Accordingly, the court concludes that the Radford Arsenal and, specifically, building 220, is a federal enclave that is subject to exclusive federal jurisdiction.[6]

B. Motion to Remand

A defendant may remove a case from state court to federal court if the federal district court has subject matter jurisdiction and the case could have been brought in federal court originally. 28 U.S.C. § 1441. Section 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Id. In order to effectuate removal, a defendant or defendants must file a notice of removal within thirty days of when the grounds for removal became apparent. 28 U.S.C. § 1446.

---

[6] The court also notes that at the December 12, 2019 hearing, counsel for BAE provided the court with extensive maps detailing that building 220 was part of the 1942 Deed of Cession.

7

"On a motion to remand, the burden of establishing federal subject-matter jurisdiction falls on the party seeking removal to the federal forum . . ." Vill. Builders on the Bay, Inc. v. Cowling, 321 F.Supp.3d 624, 627 (E.D. Va. 2018); see also Nordan v. Blackwater Sec. Consulting, Ltd. Liab. Co., 460 F.3d 576, 583 (4th Cir. 2006) ("The party seeking removal bears the burden of demonstrating that removal jurisdiction is proper."). In this case, the defendants bear the burden. Federal courts have a "duty to construe removal jurisdiction strictly and resolve all doubts in favor of remand." Palisades Collections LLC v. Shorts, 552 F.3d 327, 336 (4th Cir. 2008). This is in part "because of the 'significant federalism concerns' implicated" by removal. Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) (quoting Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)). "Therefore, if federal jurisdiction is doubtful, a remand to state court is necessary." Id. Further, 28 U.S.C. § 1367(c)(3) provides a district court with discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it had original jurisdiction.

Where, as here, removal is based on 28 U.S.C. § 1331 (federal question jurisdiction), and not 28 U.S.C. § 1332 (diversity jurisdiction), the court must determine as a threshold question whether the plaintiff's claims arise under federal law. See Flying Pigs, LLC v. RRAJ Franchising, LLC, 757 F.3d 177, 181 (4th Cir. 2014). Typically, "a case arises under federal law when federal law creates the cause of action asserted." Id. (quoting Gunn v. Minton, 568 U.S. 251, 257 (2013)).

In Meadows' motion to remand, he argues that none of his claims arose at the Radford Arsenal and defendants have not established an alternate reason for federal jurisdiction. The court will explore each of the claims in turn.

i. <u>Counts I and II - Defamation and Defamation Per Se</u>

As a preliminary step, Meadows argues that the "[f]ederal enclave doctrine operates as a choice of law doctrine that dictates which law applies to causes of action arising on [federal enclaves]," <u>Allison</u>, 689 F.3d at 1235, and the applicable law here is that of the "<u>lex loci delicti</u>, or place of the wrong." <u>Jones v. R. S. Jones & Assocs.</u>, 246 Va. 3, 4-5, 431 S.E.2d 33, 34 (1993); see also <u>Maryland v. Coard</u>, 175 Va. 571, 580-81, 9 S.E.2d 454, 458 (1940) ("[T]he <u>lex loci</u> will govern as to all matters going to the basis of the right of action itself.").[7]

In order to determine where the defamation claims arose, the court must first determine where the place of the harm occurred. "In defamation actions, the place of the harm has traditionally been considered to be the place where the defamatory statement was published, i.e., seen or heard by non-parties." <u>Wells v. Liddy</u>, 186 F.3d 505, 521-22 (4th Cir. 1999). "With respect to defamation claims involving email, the place of publication is deemed to be the place where the email was received (i.e., opened and read)." <u>Galustian v. Peter</u>, 561 F.Supp.2d 559, 565 (E.D. Va. 2008); see also <u>Edwards v. Schwartz</u>, 378 F.Supp.3d 468, 502 (W.D. Va. Mar. 19, 2019) ("In defamation cases, Virginia courts apply the substantive law of the state where the defamatory statements were first published . . . . When the alleged defamation is executed via email correspondence, the place of publication is dictated by the place where the email was opened and read.").

According to Meadows, the bulk of his defamation claims arise from BAE's initial disclosure of the false claim to the DOD on July 25, 2017. This was made to the DOD's Office

---

[7] Because Virginia's choice of law rule was in existence before the Radford Arsenal was ceded to the United States, the <u>lex loci delicti</u> rule is applicable whether the claims arose at the Radford Arsenal or elsewhere in Virginia. See <u>Allison</u>, 689 F.3d at 1237.

9

of the Inspector General, located physically in Alexandria, Virginia. Meadows also alleges that follow-up emails to the DON in August and December of 2017 were defamatory. These emails were sent to Michael J. Woods of the DON's Acquisition Integrity Office, located physically in Washington, D.C. Meadows asserts that "none of BAE's statements to the DOD or DON were published, made, opened, or received at the [Radford] Arsenal, the only federal enclave alleged by Defendants." ECF No. 20, at 17.

BAE accepts Meadows' argument that the place of publication for defamation via email correspondence is the place where the email was opened and read. Def. Mem. Opp'n Remand, ECF No. 27, at 23, n. 15. However, BAE argues, in its reply, that if the alleged defamation occurred, it occurred on a federal enclave because the Navy Yard in Washington, D.C. is also a federal enclave.[8] Defendants, in their notice of removal, stated that Meadows' claims "only arise, if at all, under federal law because they related to and or arise out of Meadows' work for BAE at the [Radford Arsenal], a federal enclave." Notice of Removal, ECF No. 1, ¶ 5. At no point until BAE's reply to Meadows' motion to remand does BAE claim that the alleged defamation occurred at a different federal enclave. BAE also did not move to amend its notice of removal to incorporate this allegation and, accordingly, the court cannot consider such an allegation. See McFadden v. Federal Nat. Mortg. Ass'n, 525 F. App'x 223, 233 (4th Cir. 2013) ("District courts throughout this Circuit have similarly forbidden defendants from attempting to amend their Notices of Removal via memoranda in opposition to motions to remand, holding that a defendant may not use a memorandum to attempt to amend his notice of

---

[8] The court notes that BAE does not claim that the Alexandria, Virginia location is a federal enclave. Rather, BAE solely relies on the allegation that the Navy Yard in Washington, D.C. is a federal enclave.

10

removal to add a basis for removal, and making plain that new bases not timely asserted in the removal notice will be rejected."); see also Phillips v. BJ's Wholesale Club, Inc., 591 F.Supp.2d 822, 825 (E.D. Va. 2008) ("Courts have generally adopted a strict construction of the general rule that allegations of jurisdiction imperfectly stated in the original petition for removal may be amended even after expiration of the 30–day removal period, whereas missing allegations may not be supplied nor new allegations furnished").

The court finds that defamation that is sent via email is published at the location the email is opened and read. See Edwards, 378 F.Supp.3d at 502. In this case, that is Alexandria, Virginia and Washington, D.C, and not the Radford Arsenal. Therefore, the court concludes that the defamation claims, Counts I and II, did not arise at the Radford Arsenal, and the court lacks subject matter jurisdiction. Further, because the court will dismiss Meadows' remaining claims, the court declines to exercise supplemental jurisdiction over Counts I and II and remands Counts I and II to the Circuit Court for Montgomery County pursuant to 28 U.S.C. § 1367(c)(3).

    ii.    Count III – Wrongful Termination

Meadows makes the same choice of law argument as to his wrongful termination claim as he did with his defamation claims. See Allison, 689 F.3d at 125; Jones, 246 Va. at 4-5. He argues that "[t]he place of the wrong for purposes of this rule is the 'place where the last event necessary to make an actor liable for an alleged tort takes place.'" Hagan v. Feld Entm't, Inc., 365 F. Supp. 2d 700, 707 (E.D. Va. 2005) (quoting Insteel Indus. v. Costanza Contracting, 276 F. Supp. 2d 479, 486 (E.D. Va. 2003)). With respect to wrongful discharge, the last event necessary is the discharge itself. Because BAE terminated Meadows through a letter sent to

11

his home in Montgomery County, Meadows argues that the last event necessary under lex loci delicti occurred at his home in Virginia and not on the federal enclave.

BAE again accepts Meadows's arguments regarding the application of Virginia's lex loci delicti. However, BAE argues that Meadows' termination was effected and carried out by BAE's human resource manager from his office in building 220 of the Radford Arsenal and that "under the doctrine of lex loci delecti as applied by courts in Virginia, it is the location where the employer effects the termination that controls, not the location where a plaintiff receives notice of the same." ECF No. 27, at 19.

Under Virginia law, an employee's location when they receive notice of their termination is irrelevant to where that termination was "effected." Mullins v. Int'l Union of Operating Eng'rs Local No.77, 214 F.Supp.2d 655, 666-67 (E.D. Va. 2002), aff'd, 60 F. App'x 510, 511 (4th Cir. 2003). In Mullins, the court concluded that an employee's termination was effected by her employer from its facility in Maryland, regardless of the employee calling and receiving notice of her termination while she happened to be in Virginia. Id. The court stated: "The fortuitous circumstance that [plaintiff] was in Virginia when she placed the telephone call is insufficient to establish the application of Virginia law." Id.

Meadows argues that Mullins does not apply because a termination letter sent to his home address is not a fortuitous circumstance. The court disagrees. With respect to a termination of employment, the termination is effectuated when the employer makes the decision and originates the communication to the employee. See Mullins, 214 F.Supp.2d at 666; see also Musselman v. Merck & Co., No. 1:06cv845, 2006 WL 2645174, at *2 (E.D. Va. Sept. 13, 2006) ("Where a plaintiff alleges a claim for wrongful termination, the applicable law

is that of the place where the termination was effected."). As such, because Meadows' termination was contemplated and carried out from the Radford Arsenal, federal jurisdiction is proper.

Accordingly, the court concludes that the wrongful termination claim arose at the Radford Arsenal, where the termination was effected, and this court has the subject matter jurisdiction to hear the claim. The court will deny Meadows' motion to remand as it applies to Count III.

        iii.    Counts IV and V – Common Law Conspiracy & Statutory Business Conspiracy

Again, Meadows repeats his choice of law argument under Allison, 689 F.3d at 1235, and Jones, 246 Va. at 4-5. He asserts that "[w]hen determining what [jurisdiction's] law is dictated by lex loci delicti with respect to conspiracy, the place of the wrong is the place of the first causally-related injury because the first legal injury produced by an alleged business conspiracy is the last act necessary for liability." Hilb Rogal & Hobbs Co. v. Rick Strategy Partners, Inc., No. 3:05cv355, 2006 WL 5908727, at *6 (E.D. Va. Feb. 10, 2006), aff'd, 230 F.App'x 328 (4th Cir. 2007). According to Meadows, BAE and Orbital ATK conspired to discharge him from his respective employment with each company on false conflict of interest grounds and that his first causally-related injury occurred off the federal enclave when he was terminated by Orbital ATK on May 4, 2017.

BAE agrees with Meadows' standard for determining the lex loci delicti of conspiracy but argues that Meadows' first causally-related injury was his suspension on May 1, 2017, which occurred at the Radford Arsenal, and not his termination by Orbital ATK on May 4,

2017. BAE argues that the conspiracy occurred, if at all, at the Radford Arsenal and that this court has subject matter jurisdiction.

In his amended complaint, Meadows alleges that BAE suspended him without pay on May 1, 2017, and the court finds that the suspension was the first causally-related injury. See Am. Compl., ECF No. 1-1, at ¶ 172. Accordingly, the court concludes that the place of the harm from the common law conspiracy and statutory conspiracy claims was the Radford Arsenal and the court has subject matter jurisdiction to hear the claims. The court will deny Meadows' motion to remand as it relates to Counts IV and V.

C. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. Absent subject matter jurisdiction, a court must dismiss the action. Evans v. B.F. Perkins Co., 166 F.3d 642, 653 (4th Cir. 1999). "When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject-matter jurisdiction, the burden of proving subject-matter jurisdiction is on the plaintiff." Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). Generally, "[w]hen considering a Rule 12(b)(1) motion to dismiss, a court assumes that all factual allegations in the complaint are true." Falwell v. City of Lynchburg, 198 F. Supp. 2d 765, 771-72 (W.D. Va. 2002).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). A plaintiff establishes "facial

plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In ruling on a 12(b)(6) motion, the court must accept all well-pleaded allegations in the complaint as true and draw all reasonable factual inferences in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) (holding the court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.").

Here, defendants argue that the remaining claims, Counts III, IV, and V, should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or a failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). First, defendants argue that Meadows' Bowman action for wrongful discharge is not a cognizable claim because it relies on state law. Second, they argue that Meadows' statutory business conspiracy claim faces the same issue, and is not a cognizable claim. Finally, defendants argue that even though Meadows might have a cognizable claim for common law conspiracy under federal law, Meadows fails to state a claim.

i. Count III – Wrongful Termination

BAE argues that Count III for wrongful termination should be dismissed under Fed. R. Civ. P. 12(b)(6) because wrongful termination is not cognizable under federal law. Meadows' claim is based on the Supreme Court of Virginia's ruling in Bowman, 229 Va. at 539-540, where the Virginia Supreme Court recognized a claim for wrongful termination. As

15

discussed above, because the court finds that Meadows' termination occurred at the Radford Arsenal, the court must apply state law up until the time the Radford Arsenal was ceded to the United States in 1942, and subsequent to that date, federal law. See Stokes, 265 F.2d at 665 ("It is also clear that only the state laws in effect at the time of the transfer of jurisdiction continue in effect and that subsequent statutes of the state are not part of the laws of the ceded area unless Congress takes action to keep them current."); JAAAT Tech. Servs., LLC v. Tetra Tech Tesoro, Inc., No. 3:15cv235, 2016 WL 12710392, at *3 (E.D. Va. March 29, 2016) ("After a state has transferred authority over a tract of land creating a federal enclave, the state may no longer impose new state laws on the land."). In other words, "we look to the date of cession to determine which state laws apply to the federal enclave . . ." Allison, 689 F.3d at 1239.

Under Virginia law, wrongful termination was not cognizable until the Bowman decision in 1985. Meadows has not provided any evidence that either Congress has adopted the Bowman decision with respect to the Radford Arsenal or that there is any applicable federal law for his wrongful termination claim. See James Stewart & Co. v. Sadrakula, 309 U.S. 94, 100 (1940) ("Since only the law in effect at the time of the transfer of jurisdiction continues in force, future statutes of the state are not a part of the body of laws in the ceded area.").[9] Accordingly, because Meadows fails to plead a cognizable claim, the court concludes that he

---

[9] Meadows also asserts claims for wrongful termination under the Virginia Uniform Trade Secrets Act ("VUTSA"), Va. Code Ann. § 18.2-152.1, et seq., the Virginia Computer Crimes Act ("VCCA"), Va. Code Ann. § 18.2-152.1, et seq., and the Economic Espionage statute, 18 U.S.C. § 1831. The VUTSA was enacted in 1986 and the VCCA was enacted in 1984. Because both statutes post-date the 1942 cessation, neither are cognizable federal claims. Further, Meadows fails to plead with any specificity above mere speculation how his violation of the Economic Espionage statute, a federal criminal statute, would constitute a claim for civil wrongful termination. See Twombly, 550 U.S. at 555.

has failed to state a claim upon which relief can be granted and will grant BAE's motion to dismiss Count III.

        ii.    Counts IV and V – Common Law Conspiracy & Statutory Business Conspiracy

NGIS and BAE move to dismiss Meadows' conspiracy claims, arguing that Meadows' statutory business conspiracy claim relies on Virginia state law that was enacted after the Radford Arsenal was ceded to the United States and that the claim only alleges injury to Meadows' employment interests. Further, Meadows' common law conspiracy claim fails to plausibly allege unlawful conduct or an actual agreement between BAE and Orbital ATK.

With respect to the statutory business conspiracy claims, because the court finds that the conspiracy, as alleged, occurred at the Radford Arsenal, it is subject to the federal enclave doctrine. The court further finds that any claim for statutory business conspiracy is not cognizable because such a claim was first created by the Virginia General Assembly in 1964, after the 1942 cessation date. See Va. Code §§ 18.2-499, 18.2-500 (1964). Meadows has not provided any evidence that Congress has adopted the Virginia statutory business conspiracy statute with respect to the Radford Arsenal or that there is any applicable federal law for his statutory business conspiracy claim. See James Stewart, 309 U.S. at 100. Thus, he cannot state a statutory claim for business conspiracy.

With respect to the common law conspiracy claim, BAE and NGIS argue that Meadows fails to plausibly allege a conspiracy claim. "A civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, resulting in damage to the plaintiff." Glass v. Glass, 228 Va. 39, 47, 321 S.E.2d 69, 74 (1984). Torts may constitute the unlawful purpose element of a conspiracy claim.

See Dunlap v. Cottman Transmission Sys., LLC, 287 Va. 207, 215, 754 S.E.2d 313, 316-18 (2014). Both NGIS and BAE argue that Meadows common law conspiracy claim fails because there was no unlawful act and Meadows fails to allege an agreement between Orbital ATK and BAE.

Meadows argues that he pled sufficient facts to show a common law conspiracy, but the court disagrees. First, Meadows has not established beyond mere speculation that there was unlawful conduct. See Twombly, 550 U.S. at 555. Meadows asserts that BAE and NGIS conspired to fire him on "conflict of interests grounds," but does not establish that such a reason is unlawful. Am. Compl., ECF No. 1-1, at ¶ 173. Meadows also asserts that the defamation alleged in Counts I and II of the amended complaint constitutes the underlying unlawful conduct. Yet, Meadows only asserts a defamation claim against BAE and not NGIS. Because a conspiracy requires that two or more parties agree to accomplish the unlawful act, Meadows fails to state a claim for conspiracy.

Second, the court finds that Meadows' common law conspiracy claim also fails because he did not allege facts supporting a preconceived plan between BAE and Orbital ATK—a necessary element of his claim. As the Supreme Court held in Twombly, "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of an agreement at some unidentified point does not supply facts adequate to show illegality" because "merely parallel conduct . . . could just as well be independent action." 550 U.S. at 556-57. Here, Meadows relies on conclusory statements that an agreement was made between the parties, yet he fails to plead sufficient facts to establish that BAE and Orbital ATK entered into an

agreement to unlawfully terminate him. Accordingly, the court will grant defendants' motions to dismiss Counts IV and V for failure to state a claim upon which relief can be granted.[10]

### III.

For the reasons stated herein, the court:

- **GRANTS** Meadows' motion to remand, ECF No. 19, in part and **REMANDS** Counts I and II of the amended complaint to the Circuit Court of Montgomery County;

- **GRANTS** BAE and NGIS's motions to dismiss, ECF Nos. 3 and 5, in part and **DISMISSES** Counts IV and V of the amended complaint for failure to state a claim;

- **GRANTS** BAE's motion to dismiss, ECF No. 5, in part and **DISMISSES** Counts III for failure to state a claim;

- **DENIES** Meadows' motion to remand, ECF No. 19, as it relates to Counts III, IV, and V; and

- **DENIES** BAE's motion to dismiss, ECF No. 5, as it relates to Counts I and II.

The case will be **DISMISSED** and **STRICKEN** from the docket of the court. An appropriate Order will be entered.

Entered: 01-29-2020

/s/ Michael F. Urbanski
Michael F. Urbanski
Chief United States District Judge

---

[10] Because the court remands Counts I and II to the Circuit Court of Montgomery County and dismisses each of Meadows' remaining claims pursuant to Fed. R. Civ. P. 12(b)(6), it need not decide BAE's derivative sovereign immunity defense or its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).

19